GOETSCH, Plaintiff in error, v. STATE, Defendant in error.

*No. State 98. Argued December 2, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 688.)

286

For the plaintiff in error there was a brief and oral argument by *Sheldon E. Meyer* of Waupun.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom

on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Arthur Wiesender,* district attorney of Green Lake county.

HANLEY, J. The defendant presents the following issues on this appeal:

(1) Did the trial court err in allowing the expert testimony of Drs. Geocaris and McFall into evidence without requiring the introduction of the actual tests and report;

(2) Was the evidence sufficient to support the trial court's determination that the defendant was in need of specialized treatment under the Sex Crimes Act?

*Admissibility of Testimony.*

The allegedly objectionable testimony of Dr. McFall consisted of his description of the department's tests and his interpretation of their results. In explaining the various tests employed by the department, he testified that the defendant had undergone a series of tests which are given to all persons brought to the facility for evaluation. These tests included the Culture Fair test, the Wide Range Vocabulary test, the Thorn Sex Inventory (Thorn test), the Minnesota Multiphasic Personality Inventory (MMPI) and the 16 PF test.

The Culture Fair test and the Wide Range Vocabulary test are simply standard intelligence tests which are administered nationally. As stated by Dr. McFall:

"Both of these tests involve answering informational type questions which are designed to reflect a man's intelligence. These two [tests] are actuarial; they are scored by a clerk; they don't involve any interpretation on his part. It is adding up the number of correct answers."

As to the Thorn test, Dr. McFall indicated that it is designed to compare the characteristic responses of in-

dividuals who are sexually deviated with those of normal individuals. He further testified that the MMPI renders a profile of various descriptive categories regarding personality functioning, while the 16 PF test discloses one's behavior preferences. All three of these tests consist of numerous true or false questions which, like the previously mentioned intelligence tests, are scored actuarially by staff members before being analyzed and interpreted by Dr. McFall.

In addition to the foregoing, the defendant was also given the Rorschach test and the Thematic Apperception test (TAT), both of which were personally administered by Dr. McFall. He described the Rorschach test as a series of ten ink blots which are shown to an individual who is asked to describe whatever item they suggest to him. The individual's responses are then used to determine his inner feelings or deviations. Somewhat similar is the TAT wherein the individual is presented a number of picture cards and asked to relate whatever story is suggested by the cards.

After completing his explanation of these tests, Dr. McFall stated that in his opinion, based upon his interpretation and correlation of these tests, as well as his personal interview with the defendant, there was a strong probability that the defendant had a significant psychopathology.

It is the defendant's contention on this appeal that the admission of Dr. McFall's testimony was in violation of the best-evidence rule in that neither the department's report nor the tests upon which it was partially based had been introduced into evidence. Like objection is made to the testimony of Dr. Geocaris.

According to the defendant the admission of this testimony is so clearly violative of the best-evidence rule as to require no citation of authority. This contention, however, is of no merit and, upon oral argument, it was so recognized by the defendant.

As stated in 29 Am. Jur. 2d, *Evidence*, pp. 510, 511, sec. 449:

"The best evidence rule has no application to a case where a party seeks to prove a fact which has an existence independently of any writing; he may do so by oral testimony, even though the fact has been reduced to, or is evidenced by, a writing. . . . The best evidence rule is aimed only at excluding evidence which concerns the contents of a writing, and testimony as to other facts about a writing . . . may be admissible. In other words, the rule excludes testimony designed to establish the terms of a document, and requires the document's production instead, but does not exclude testimony which concerns the document without aiming to establish its terms."

Here the testimony of Drs. McFall and Geocaris was not introduced to prove the content of the report nor was their testimony aimed at establishing whether any given question had been answered true or false. Clearly, the answers to the questions would have been meaningless to the trier of fact in and of themselves. The value of these tests lay wholly in the interpretation given to them by the expert witnesses; and it was to establish their respective interpretations that the witnesses' testimony was received. There can be no question that the conclusions and interpretations of Drs. McFall and Geocaris had an existence independent of the department's tests. Furthermore, the mere fact that Dr. McFall's conclusions were reduced to writing in the form of the department's report does not render testimony as to its contents inadmissible. *Sayen v. Rydzewski* (7th Cir. 1967), 387 Fed. 2d 815.

The purpose of the best-evidence rule is to prevent fraud upon the trier of fact. *Grunwaldt v. State Highway Comm.* (1963), 21 Wis. 2d 153, 124 N. W. 2d 13. Clearly, the trial judge was not misled by the expert testimony in the case now before this court. In response to defense counsel's contention that the tests should be required in evidence, the judge stated:

"The fact is the court could look at that test and it wouldn't mean a thing . . . without the doctor's interpretation. . . ."

The admission of such tests into evidence would thus have served no useful purpose. Nor was the defendant's position injured in any way by their not being introduced.

The defendant also takes the position that the state's failure to offer the department's tests to either his counsel or his expert witness constitutes a prejudicial denial of due process. This contention is predicated upon an unwarranted assumption that the state has the duty to produce such tests despite the defendant's failure to request or subpoena them.

Although the record clearly discloses that the defendant, as required by *Huebner, supra,* had been furnished power to subpoena documents, the defendant attempts to exonerate himself from his failure to exercise this power. He asserts that he was unaware of the existence of the department's tests until the hearing and was thus prejudiced by the court's refusal to require their production.

Again the record does not substantiate this assertion. On the contrary, it reveals that the department's report, a copy of which was received by him prior to the hearing, made specific reference to the tests in question. In addition, it appears that the defendant's expert witness was a former member of the sex deviate board. As such, it would not be unreasonable to assume that he would have been at the very least cognizant of the fact that such tests were employed by the department.

The constitution imposes no duty upon the state to produce unrequested documents. Had the defendant desired the instant tests in order to facilitate cross-examination of state witnesses, he need only to have requested or subpoenaed them. The defendant was in no way prejudiced in the instant case.

*Sufficiency of the Evidence.*

The defendant's second contention is that the state has failed to prove beyond a reasonable doubt that he was a sex deviate in need of specialized treatment. Implicit in this contention are the assumptions that the state has the burden of proving the need for specialized treatment and that such burden must be met beyond a reasonable doubt.

Prior to *Huebner* the trial court's compliance with the department's recommendation was mandatory. If the department recommended specialized treatment, the court was required to place the defendant on probation under the control and supervision of the department with the requirement that he receive treatment, or commit him to the department for care as an inpatient at the sex deviate facility. *Huebner v. State, supra,* at page 522.

In *Huebner,* however, this court held that due process required that the defendant be given a hearing on the issue of his need for specialized treatment and that the judge make an independent determination upon the evidence. In so holding, the court did not define the quantum of proof to be required by the judge nor did it assign the burden of proof to either of the respective parties. A determination of these matters is appropriate.

Of the cases reported subsequent to *Huebner,* only *Buchanan v. State* (1969), 41 Wis. 2d 460, 164 N. W. 2d 253, offers any suggestion as to the proper rule to be adopted by this court. There it was argued that the fourteenth amendment required a jury trial on the issue of the need for specialized treatment. In refusing to recognize the right to a jury determination, this court concluded: (1) That the hearing was no longer a part of the guilt determining process; and (2) that the purpose of the hearing was not to determine the criminal punishment to be imposed but to determine whether treatment and the protection of the public were necessary. It is

apparent that since guilt is no longer a factor, the state should not be required to prove the need for specialized treatment beyond a reasonable doubt. We now hold on the issue of whether the defendant needs specialized treatment that the burden of proof is upon the state to satisfy the court to a reasonable certainty by the greater weight of the credible evidence.

The same standard would apply on a defendant's hearing to be released pursuant to sec. 959.15 (15) (c), Stats.

We think the evidence was sufficient to sustain the trial court's determination that the defendant was in need of specialized treatment under the Sex Crimes Act.

Although the defense witness, Dr. George F. Meisinger, testified that, in his opinion, the defendant was not sexually deviated, there was ample testimony to the contrary.

As previously mentioned, it was the considered opinion of Dr. McFall that there was a very strong probability the defendant had a significant psychopathology. In addition, Dr. Geocaris testified:

"There is a likelihood of his repeating this or this type of a similar sex crime. We felt it was almost certain he would get into some other kind of difficulty whether sexual or not. There is very little doubt in my mind or the minds of the staff. It was also our feeling that in addition to say possibly getting into other kinds of difficulty, it is quite likely in time he would become involved in other sex offenses if he was not treated. This is my impression based on my experience with these kinds of problems."

This court will not upset the factual findings of the trial court unless contrary to the great weight and clear preponderance of the evidence. We conclude that the order of the trial court must be affirmed.

*By the Court.*—Order affirmed.