**UNITED STATES of America, Appellee,**

v.

**Susanne M. HUTCHINSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Gordon ENNIS, Appellant.**

**Nos. 73–1159, 73–1179.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1973.

Decided Dec. 5, 1973.

Rehearing and Rehearing En Banc Denied Jan. 10, 1974.

Jan Stuurmans, Minneapolis, Minn., for appellant Hutchinson.

Alan K. Schwartz, Los Angeles, Cal., for appellant Ennis.

Earl Gray, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In a joint trial in the United States District Court for the District of Minnesota, a jury found Susanne Hutchinson and Gordon Ennis guilty of certain narcotics offenses specified below. We affirm their convictions. Because they were not charged in identical counts and present independent assignments of error, their appeals—though consolidated—are considered separately.

I

Defendant, Susanne Hutchinson, was charged, jointly with her husband, Thomas Hutchinson, with knowingly and intentionally possessing, with the intent to distribute, approximately 11 ounces of cocaine in violation of 21 U.S.C. § 841(a)(1) and with conspiring to violate that statute.[1] Defendant's husband pleaded guilty to the possession charge and to three charges of distributing and dispensing cocaine, and the conspiracy charge against him was thereafter dismissed. Prior to trial, a motion to suppress evidence seized in a search of the Hutchinson residence[2] conducted on April 7, 1972, was denied by the District Judge, Honorable Earl R. Larson. Upon trial to a jury Susanne Hutchinson was found guilty of possession, as charged, but was acquitted of the conspiracy count.

In this appeal she contends (A) that federal narcotics agents, in violation of her Fourth Amendment rights and of 18 U.S.C. § 3109 searched her residence and seized certain items later used as evidence at her trial; and (B) that the jury's verdict was not supported by the evidence. We affirm her conviction for the reasons discussed below:

A. *The Search and Seizure*

Susanne Hutchinson raises in her appeal the question whether a government agent working in an undercover capacity is required to announce his identity and purpose under 18 U.S.C. § 3109[3] and under the Fourth Amendment when he is invited into a home for the purpose of purchasing illegal narcotics.

The record in this case reveals that Special Agent James D. McDowell, working in an undercover capacity for the Bureau of Narcotics and Dangerous Drugs, arranged with Thomas Hutchinson to purchase one-half pound of cocaine. He had previously negotiated several narcotics transactions with

---

1. The statute contains a separate conspiracy provision, 21 U.S.C. § 846. This was a seven count indictment. Only Counts VI and VII charged Susanne Hutchinson with criminal behavior; the other counts charged other individuals, i. e., Thomas Hutchinson, Gordon Ennis, and Onita Ennis.

2. 3829 Blaisdell Avenue South, Minneapolis, Minnesota.

3. "The officer may break open any outer or inner door or window of a house . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant."

Hutchinson in the presence of his wife, Susanne. This transaction was to be completed on April 7, 1972 at the Hutchinson home. On that date, Agent McDowell obtained a search warrant for the Hutchinson residence and then went to that address to execute the warrant. The residence had both an outer screen door and an inner door. McDowell knocked on the screen door. Thomas Hutchinson opened the inner door and invited McDowell, still in his undercover disguise, inside. McDowell opened the screen door and entered. After being shown what he believed to be cocaine, McDowell excused himself to go to his car for money. He deliberately left the inner door partially open, but the outer screen door closed behind him as he left. McDowell opened the trunk of his car (the signal to the other officers waiting nearby to aid in the execution of the warrant) and picked up the brief case containing the warrant. Accompanied by the other officers, McDowell returned to the residence, opened the screen door and walked in through the inner door which was still partially ajar. He did not knock, identify himself or the officers, or state their purpose before entering. Packages containing varying quantities of cocaine [4] were seized as was other incriminating evidence, including a copy of a letter from Thomas Hutchinson to Gordon Ennis containing a request for four ounces of cocaine. We are asked to determine whether the trial court erred in admitting evidence seized under such circumstances.

 Appellant Hutchinson contends that because Agent McDowell was in the process of executing a warrant, § 3109 was applicable. Primary reliance is placed on Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) and Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), which together held that § 3109 requires an express prior announcement of authority and purpose even though the door through which the officers enter is unlocked or partially ajar. In reply, the government argues the broad proposition that any home loses all its constitutional protection and statutory protection conferred by § 3109 once it becomes the site of illegal transactions. While we reject that rule so broadly stated, it is well recognized that "[a] government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant." Lewis v. United States, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966).[5] Thus, the controlling fact here is not that on other occasions the Hutchinson residence had been used as a site for illegal transactions, but rather that on the particular day of April 7, Agent McDowell had been invited into the Hutchinson residence for the purpose of purchasing cocaine. McDowell entered the home with the consent of all there present. That consent did not automatically terminate when he left briefly to get his brief case from his car. His return was expected by all present, and nothing occurred from which a withdrawal of the original consent may be implied. Once that consent is placed in its proper perspective, it becomes clear that § 3109 is simply not applicable here.

Nor does the contention that McDowell gained entry by ruse compel a different conclusion. As the First Circuit has recently stated when dealing with a factually similar situation:

> The defendants do not allege, nor could they, that [Agent] Ross's presence suddenly became unlawful or that their privacy suddenly was invaded solely because his role changed from

---

4. These quantities are specified below in Part I, B.

5. The exact language in *Lewis*, unduly expanded by the government, was: "But when, as here, the home is converted into a com-

mercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." 385 U.S. at 211, 87 S.Ct. at 427.

undercover agent to arresting officer. To so hold, as was stated in Lewis v. United States, . . . 385 U.S. at 210, 87 S.Ct. at 427, . . . would 'come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se*.' The lawful presence of a government agent precludes any argument that later entries violate the privacy of occupants. Since privacy is what § 3109 seeks to protect, the prior lawful entry and continued presence of Agent Ross vitiates any impropriety of subsequent entries. United States v. Bradley, 455 F.2d 1181, 1186 (1st Cir. 1972), aff'd on other grounds, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973).

While in United States v. Bradley one government agent remained in the dwelling during the entire time period in question, we find nothing in that case contrary to our holding that McDowell's momentary absence from the Hutchinson residence did not abrogate the lawful character of his original entry. *See* United States v. Ryles, 451 F.2d 190 (3d Cir. 1971), cert. denied, 406 U.S. 926, 92 S.Ct. 1796, 32 L.Ed.2d 127 (1972). In *Bradley* the court expressly did not reach the "ruse" defense. 455 F.2d at 1186. As in *Bradley*, we need not here decide the implications of an entry by ruse, on which other circuits have reached varying conclusions,[6] because the original entry of Agent McDowell was lawful and no independent deception was practiced in reentering after his brief absence. "[P]rivacy is what § 3109 seeks to protect"[7] and under these facts the Hutchinsons' privacy was not offended by the absence of § 3109 formalities.[8]

B. *Sufficiency of the Evidence*

 Appellant contends that the facts established at her trial do not constitute evidence sufficient to sustain her conviction for the offense of knowingly and intentionally possessing, with the intent to distribute, approximately 11 ounces of cocaine in violation of 21 U.S. C. § 841(a). We disagree. A violation of that statute requires both possession of the contraband and the intent to distribute it. Possession may be actual or constructive, and either sole or joint. United States v. Bridges, 419 F.2d 963 (8th Cir. 1969); Bass v. United States, 326 F.2d 884 (8th Cir.), cert. denied, 377 U. S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); Mack v. United States, 326 F. 2d 481 (8th Cir.), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964); *see also* United States v. Dugan, 477 F.2d 140 (8th Cir. 1973). It is well settled that knowledge of the presence of the contraband plus control over it is sufficient evidence of possession. Bass v. United States, *supra*, 326 F.2d at 886.

Appellant occupied the residence with her husband, Thomas Hutchinson. The April 7th search revealed, in addition to the approximately 11 ounces of cocaine being negotiated for sale in appellant's presence by Thomas Hutchinson to Agent McDowell, one baggie of cocaine in a living room desk and six baggies of cocaine in a bedroom dresser shared by appellant and her husband.

 "Constructive possession" has been generally defined as knowingly having both the power and intention at a given time to exercise dominion or control over the property. Rodella v. United States, 286 F.2d 306, 311–312 (9th Cir. 1960), cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961), cited in United States v. Dugan, *supra*, 477 F.2d at 141.

[C]ontrol over the apartment or automobile where the narcotic is found is strong evidence of control over the narcotic. It does not have to be exclusive control over the premises if there

---

6. United States v. Bradley, *supra*, 455 F.2d at 1186 n. 12.

7. *Id*. at 1186.

8. Nor did the result in *Bradley* depend upon the presence of "exigent circumstances", which the court declined to consider in view of the agent's prior lawful entry. *Id*. at 1186 n. 13.

is other evidence to show control over the [drug].

Bass v. United States, *supra*, 326 F.2d at 887.

Constructive possession may be established by circumstantial evidence. Bass v. United States, *supra*, 326 F.2d at 888.

■ The record in this case discloses more than mere proximity of the appellant. *Cf.* McDonnell v. United States, 472 F.2d 1153, 1156 (8th Cir.), cert. denied, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402 (1973). With full knowledge of prior narcotic transactions between her husband, Thomas Hutchinson, and Agent McDowell, the appellant admitted McDowell to her home on March 20. There he discussed his wish to purchase half a pound of cocaine from "the Source". When McDowell suggested that "the Source" bring the cocaine, since half a pound was "an awful lot of cocaine" to send through the mails, appellant told him that since the cocaine was sent to various addresses around the neighborhood there really was not that much danger involved.[9] Appellant in words and conduct assumed more than a passive role. She allayed McDowell's professed fears and encouraged him to make a deal for the purchase of approximately one-half pound of cocaine in her residence. Not only was appellant in constructive possession of the cocaine, but she demonstrated her joint interest in the transaction and manifested her intent that the cocaine be distributed to McDowell.[10] Moreover, the jury could well have found from such evidence that appellant by words and conduct aided and abetted her husband in a joint purpose to distribute the 11 ounces of cocaine admittedly in Thomas Hutchinson's possession at the time of the search. *See* United States v. Atkins, 473 F.2d 308, 310 (8th Cir.), cert. denied, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973).

■ Taking these facts as we must, in the light most favorable to the verdict of the trier of fact, accepting as established all reasonable inferences that tend to support the fact trier's decision, and resolving any evidentiary conflicts in favor of the fact finder's verdict,[11] we hold that the evidence was sufficient, if believed, to support a finding that appellant was in knowing possession of cocaine, a controlled substance, with intent to distribute it.

## II

Gordon Ennis, a resident of San Francisco, was arrested upon his arrival at the Minneapolis airport on April 10, 1972, three days following the arrest of the Hutchinsons. Following an indictment and trial before a jury, Gordon Ennis was found guilty of conspiring, confederating, and agreeing together with other individuals to violate 21 U.S. C. § 841(a)(1), as separately prohibited

---

9. Appellant was present again on April 7 when McDowell was admitted to the residence and shown a Kodak box containing the cocaine. Additional evidence of doubtful independent weight established that appellant lived off the fruits of the narcotic sales and that she protested McDowell's seizure of $2,500 during the April 7th search of the residence. These additional facts standing alone would be insufficient evidence of guilt. A spouse, dependent upon her husband for support, has no known duty to abandon her residence or refuse his support because of his illegal conduct, and no inference of guilt should be permitted from such facts alone.

10. Intent to distribute may also be inferred from the large quantities of cocaine found in the Hutchinson residence. Such large quantities constitute evidence that the cocaine

was not kept by the Hutchinsons merely for personal use. *See* United States v. Blake, 484 F.2d 50 (8th Cir. 1973); United States v. Wilkerson, 478 F.2d 813 (8th Cir. 1973); United States v. Echols, 477 F.2d 37 (8th Cir. 1973), cert. denied, 414 U.S. 825, 94 S. Ct. 128, 38 L.Ed.2d 58 (1973).

In *Echols*, for example, this court found that the possession of 199.73 grams of cocaine constituted a sufficient basis for inferring the intent to distribute where there was no evidence that the appellant was an addict. Here, an even greater quantity was found in the Hutchinson residence; no evidence of addiction was introduced.

11. United States v. Dugan, *supra*, 477 F.2d at 142; United States v. Henson, 456 F.2d 1045 (8th Cir. 1972); Burke v. United States, 388 F.2d 286 (8th Cir. 1968).

by 21 U.S.C. § 846. He was found not guilty of two other offenses charged in the indictment.[12]

Appellant Ennis challenges the sufficiency of the evidence, the consistency of the verdict and the April 7th search and seizure. He further contends that the trial court erred in denying his motion for severance and for a separate trial.

### A. *Sufficiency of the Evidence*

Gordon Ennis contends that the evidence introduced at trial was insufficient to support his conviction for conspiring to distribute and dispense cocaine, and this contention forms the primary focus of his appeal. Although all of the evidence of his guilt was circumstantial, there was an adequate basis for the jury's verdict when viewed in the light most favorable to the government.

The threshold question is whether or not the existence of the conspiracy was established. "The offense of conspiracy consists of an agreement between the conspirators to commit an offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy." United States v. Skillman, 442 F.2d 542, 547 (8th Cir.) cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940). The agreement, which need not be express or formal, may be established by circumstantial evidence. Koolish v. United States, 340 F.2d 513, 523–524 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.

Ed.2d 724 (1965); Phelps v. United States, 160 F.2d 858, 867 (8th Cir. 1947), cert. denied, 334 U.S. 860, 68 S. Ct. 1525, 92 L.Ed. 1780 (1948). There was abundant evidence from which the jury could find that a conspiracy existed to obtain cocaine from a source in California and distribute it in Minnesota. The testimony of Thomas Hutchinson, a named co-conspirator, was alone sufficient, if believed, to establish the nature and existence of the conspiracy; and was further re-enforced by statements to Agent McDowell by both Hutchinson and his wife outlining the manner in which the drugs were to be obtained from California.[13]

The more serious question is the sufficiency of the evidence of Ennis' involvement as a member of the conspiracy. Once there is satisfactory proof that a conspiracy exists, a particular individual's participation therein may be established by evidence that otherwise seems slight. Koolish v. United States, *supra,* 340 F.2d at 524; Phelps v. United States, *supra,* 160 F.2d at 867–868; Galatas v. United States, 80 F.2d 15, 24 (8th Cir. 1935), cert. denied, 297 U.S. 711, 56 S.Ct. 574, 80 L.Ed. 998 (1936); Fox v. United States, 381 F.2d 125, 129 (9th Cir. 1967). The evidence here is more than slight.

First, the search of the Hutchinson residence revealed a copy of a letter, dated March 7, from Thomas Hutchinson to Gordon Ennis wherein Hutchinson ordered four ounces of cocaine and invited Ennis to Minneapolis the week

12. Both Gordon and his wife, Onita Ennis, were tried jointly with Susanne Hutchinson, whose appeal is considered *supra.* In addition to the conspiracy charge, Gordon Ennis had been charged with knowingly and intentionally distributing and causing to be distributed approximately 51.27 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), and with knowingly and intentionally using a communication facility, the mail, in committing, causing, and facilitating the distribution of cocaine (a felony under 21 U.S.C. § 841(a)(1)) in violation of 21 U.S.C. § 843. Onita Ennis, charged with the same crimes as her husband, was acquitted of all three.

13. Of course, the overt acts performed by Susanne Hutchinson and Onita Ennis, who were ultimately acquitted of conspiracy charges, can no longer be considered in proving the crime of conspiracy, for the rule is that at least one overt act must have been committed by one of the conspirators. Herman v. United States, 289 F.2d 362 (5th Cir.), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). In the instant case, however, there was evidence of overt acts committed by appellant Ennis himself and by Thomas Hutchinson, against whom the conspiracy charge was eventually dismissed upon his plea of guilty to four substantive counts.

of April 8–15 to discuss "business transactions".[14] The search also uncovered a Kodak box containing approximately one-half pound of cocaine. The box was traced to a photographic store in San Francisco where Gordon Ennis did frequent business. Other items properly before the jury included Hutchinson's address book, a money order receipt from Hutchinson's bedroom naming Ennis as payee, and Hutchinson's telephone records, all of which supported an inference of Gordon Ennis' participation in the conspiracy.

█ In addition, the jury had before it the testimony of Agent McDowell, who stated that on several occasions Thomas Hutchinson referred to his source of cocaine as "Gordon".[15] While declarations of one conspirator in furtherance of the objects of the conspiracy "are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof *aliunde* that he is connected with the conspiracy,"[16] the search of the Hutchinson residence produced ample evidence independent of these hearsay declarations.

Finally, on April 10, 1972, Gordon Ennis arrived in the Twin Cities having traveled by plane from San Francisco with his wife, another female and "the father".[17] Agent McDowell testified that Thomas Hutchinson had previously told him that his source, a member of the Foundation of Revelation, would be traveling to the Twin Cities by plane from California on April 8 in the company of Anita,[18] another female and the father, and that the purpose of the trip concerned the father's plan to show films and discuss the Foundation of Revelation. According to McDowell, Hutchinson remarked that his source might bring some cocaine with him on this trip to Minneapolis. No contraband, however, was found on Ennis.

█ Ennis offers an explanation consistent with innocence for each of such acts or statements. However, drawing conclusions from the evidence was the jury's task, and we must accept all reasonable inferences that support the jury's conclusion. United States v. Dugan, *supra.* Considered in the light most favorable to to the jury's verdict, the evidence was sufficient to support a finding that Gordon Ennis became a participant in the conspiracy and himself acted in furtherance thereof as charged in the indictment.

14. In the letter, Hutchinson, after noting the "inevitability of business transactions" during the proposed visit, offered to split the transportation fares with Ennis.

15. When testifying at the trial, Thomas Hutchinson claimed that an individual named "Colorado" rather than Ennis was his source of cocaine. He explained that when McDowell, in his undercover disguise, offered him a sum of money in return for the name of his source, "the thing that popped in my head was Gordon, because I knew Gordon was a priest and knew dope dealers. Colorado said he was from California. I drew a correlation between the two in hopes that I could secure the meeting between the two individuals." Resolving this conflict in the evidence was a task for the jury; apparently, they chose not to believe Hutchinson's explanation, and we do not re-evaluate that decision.

16. Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). As to whether Hutchinson's identification of his source constituted a declaration made in furtherance of the objects of the conspiracy, see Salazar v. United States, 405 F.2d 74 (9th Cir. 1968), wherein the appellant challenged the admissibility of statements made by a co-conspirator to an undercover agent immediately prior to the agent's receipt of some heroin from that co-conspirator. The appellant contended that the statements, which identified him as the source of the contraband, were merely narrative remarks and were not made "in furtherance of the conspiracy." The court affirmed his conviction, holding that the statements related to and furthered the sale.

17. "The father" is the leader of the Foundation of Revelation, a religious group of which Ennis was the business manager.

18. Throughout the trial transcript, briefs, and other portions of the record, Ennis' wife is referred to interchangeably as "Onita" and "Anita". It is clear that there is no mistaken identity at issue here and that both names refer to a single individual.

**B.** *Consistency of the Verdict*

 Because no other defendant was convicted as a co-conspirator, Gordon Ennis contends that his conviction must be set aside as inconsistent and contrary to law. His reasoning seems to be founded on the premise that a conspiracy requires the participation of at least two conspirators. Susanne Hutchinson and Onita Ennis were acquitted of the conspiracy count in the indictment, but Thomas Hutchinson, also charged as a co-conspirator, was not. Rather, the conspiracy charge against him was dismissed following his plea of guilty to substantive narcotics offenses for which he was charged. Evidence of Thomas Hutchinson's overt acts was admissible against Ennis.

**C.** *Alleged Violations of Ennis' Constitutional Rights*

 Ennis' contention that the search and seizure at the Hutchinson residence on April 7 violated his constitutional rights is without merit. While we have already given full consideration to these issues, including the question of entry by ruse which appears to be Ennis' primary concern, we note nonetheless that Ennis lacks standing to challenge the search and seizure in question. As the Supreme Court stated only last term,

> [T]here is no standing to contest a search and seizure where . . . the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

Brown v. United States, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973).

Here, Ennis was not in Minneapolis when the Hutchinson residence was searched, he asserted no proprietary or possessory interest in the Hutchinson dwelling, and the offense of conspiracy does not include as an essential element possession of the seized evidence.

**D.** *The Trial Court's Denials of Motions for Severance and Separate Trials*

 It is true, as Ennis states, that severance will be allowed upon a showing of real prejudice to an individual defendant. Williams v. United States, 416 F.2d 1064, 1069–1070 (8th Cir. 1969); Hayes v. United States, 329 F.2d 209 (8th Cir. 1964), cert. denied *sub nom.* Bennett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964); United States v. Caci, 401 F.2d 664 (2d Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450 (1969); United States v. Kahn, 381 F.2d 824 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967). But in the absence of such a showing, persons charged in a conspiracy should be tried together, especially where proof of the charges against the defendants is based upon the same evidence and the same acts. United States v. Kahn, *supra*; United States v. Lebron, 222 F.2d 531 (2d Cir.), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955). Ennis has failed to demonstrate any prejudice or advance any other reason for digressing from the general rule.

 Severance of offenses and defendants is in the sound discretion of the trial court. Rule 14, F.R.Cr.P. *See* United States v. Roell, 487 F.2d 395 at 402 (8th Cir. 1973). There was no showing of abuse of that discretion.

Affirmed.