**UNITED STATES of America, Appellee,**

v.

**Thomas GAVIC, Appellant.**

**No. 74–1715.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1975.

Decided July 11, 1975.

Rehearing and Rehearing En Banc Denied Aug. 4, 1975.

# 1348

Marc G. Kurzman, St. Paul, Minn., for appellant.

Richard E. Vosepka, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Thomas Gavic was convicted of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Numerous issues are presented on this appeal. Gavic contends that he was denied his constitutional right to a speedy trial, that the contraband found in his home and his automobile should have been suppressed, and that he was denied a fair trial because the trial judge[1] im-

properly commented upon the evidence and erroneously instructed the jury. Gavic further contends that the trial judge committed reversible error in prohibiting the introduction of evidence concerning the polytypic nature of cannabis and overruling the defense's motion to strike certain expert testimony concerning a laboratory test of the marijuana found in Gavic's residence and automobile. We affirm the judgment of conviction.

The relevant portions of the record disclose that on November 28, 1973, a warrant authorizing the search of Gavic's home was issued by the United States Magistrate on the basis of an affidavit signed by Agent John Boulger of the Drug Enforcement Administration. In his supporting affidavit, the agent stated that a reliable confidential informant, who had recently provided information concerning other controlled substances, had observed a large quantity of brownish tablets which one of the occupants of the house had described to her as THC (tetrahydrocannabinol).

Gavic's home was searched pursuant to the warrant on the following day. There, special drug enforcement agents found LSD, amphetamines and a substance alleged to be marijuana. Gavic and his roommate, Gerald Seekon, were placed under arrest.[2] Each was then asked for permission to search his automobile which was parked nearby. Gavic signed a "consent form" under circumstances sharply contested both in this appeal and before the court below. The subsequent search of Gavic's automobile yielded an additional seven pounds of suspected marijuana.

On the day of his arrest, Gavic appeared before a United States Magistrate; he waived a preliminary hearing and was released on his own recognizance. On July 2, 1974, some seven months later, an indictment was returned against him, charging him with

---

1. The Honorable Irving Ben Cooper, Senior United States District Judge, Southern District of New York, sitting by designation in the District of Minnesota.

2. The charges against Seekon were subsequently dropped.

possession with intent to distribute approximately nine pounds of marijuana, seven pounds of which had been seized from his automobile and the balance from his residence. Gavic was arraigned on July 15, 1974, and following the denial of his pretrial motions to suppress the evidence seized from his residence and his car and to dismiss the indictment for failure to afford him a speedy trial, trial commenced on July 29, 1974. In accordance with a stipulation entered by the parties, the sole disputed issue presented to the jury was whether the substance seized from Gavic's home and auto was, in fact, marijuana.

The government offered one expert witness who testified that the substance was indeed marijuana, and the defense offered an expert who testified that the tests employed by the government witness were too inconclusive to establish the presence of marijuana beyond reasonable doubt. The jury resolved the issue against the defendant.

## I. SPEEDY TRIAL

■ Gavic first contends that the delay between his arrest, on the one hand, and his indictment and trial, on the other, was sufficiently long, unjustified and prejudicial to require dismissal of the indictment on Sixth Amendment grounds.[3] Assuming, without deciding, that the eight-month delay between arrest and trial was sufficiently long to be "presumptively prejudicial," Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),[4] we nonetheless determine that under the ad hoc balancing test announced in Barker v. Wingo, supra,[5] dismissal is not required here.

While it is true that the government has failed to offer an adequate reason for the delay in this case,[6] this fact is offset by Gavic's own failure to assert his right to a speedy trial. More importantly, he was not incarcerated during this period, and we discern no substantial prejudice to the defendant arising out of the delay. As the result of a pre-trial stipulation, moreover, the only witnesses at trial were experts who testified regarding the chemical properties of the substance seized by the arresting officers, thus minimizing any prejudice the delay may have engendered.

■ Conceding that the delay did not directly prejudice that phase of his case, Gavic nonetheless contends that he was seriously disadvantaged in his pre-trial motions for suppression of evidence because Gerald Seekon, who testified in his behalf, was unable to recall all the circumstances surrounding the challenged search of Gavic's automobile. Based upon what recollection he had left, however, Seekon stated unequivocally at the suppression hearing that Gavic consented to a search of his automobile only after the agents threatened to tow his car

3. Although the delay in question occurred prior to Gavic's indictment, his arrest triggered the application of the speedy trial provision of the Sixth Amendment. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Jackson*, 504 F.2d 337, 338–39 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

4. Though we need not decide what precise delay should be classified as "presumptively prejudicial," we note that the First Circuit has held an unexplained delay of nine months to be too long in a case requiring eye-witness testimony. *United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir. 1970), *after remand*, 434 F.2d 243 (1st Cir. 1970), *cert. denied*, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971). Moreover, in one of our recent cases, we held "the gap of approximately 15½ months from indictment to trial must be considered pre-

sumptively prejudicial so as to require further consideration * * * [though not] so inordinately lengthy as to automatically weigh heavily against the state." *Morris v. Wyrick*, 516 F.2d 1387, 1390 (8th Cir. 1975). The Tenth Circuit has recently held an unexplained delay totaling 11 months sufficiently long to trigger consideration of the other factors discussed in *Barker v. Wingo*. *United States v. Latimer*, 511 F.2d 498 (10th Cir. 1975).

5. The factors to be considered in applying this test are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192 (1972).

6. In its brief, the government attributes the delay to "laboratory backlogs" and prosecutorial "mix-ups."

away and have it searched. Gavic himself gave similar testimony, adding that the agents threatened to "bust [the] trunk open," while the prosecution elicited evidence from two narcotics agents that the consent had not been so coerced. In weighing such evidence, Judge Cooper credited the testimony of the agents rather than that of Gavic and Seekon. In so doing, Judge Cooper stressed not the gaps in Seekon's testimony but rather Gavic's obvious interest in the outcome of the case as well as his past criminal record. The trial court's finding of lack of prejudice must stand unless clearly erroneous. *United States v. Jackson,* 504 F.2d 337, 341 (8th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975). We cannot say that these circumstances, standing alone, warrant "the severe remedy of dismissal of the indictment." *Barker v. Wingo, supra,* 407 U.S. at 522, 92 S.Ct. at 2188.

## II. THE SEARCH WARRANT

Gavic contends that the warrant pursuant to which his residence was searched was defective because the underlying affidavit contained hearsay and possibly unreliable information.

In the challenged affidavit, John Boulger, an agent of the Drug Enforcement Administration, recited that a reliable confidential informant had reported to him that she had observed at Gavic's residence "a large number of brownish tablets which one of the occupants identified as THC." The affidavit further noted that "[b]ecause of the difficulty of producing THC it is usual that other drugs are sold as THC," *i. e.,* LSD or phencyclidine. While acknowledging the statement in the affidavit that the same informant had recently provided other accurate information concerning controlled substances,[7] Gavic asserts that, in questioning whether the substance observed was in fact THC, Boulger was

impliedly questioning the informant's reliability. Thus, he contends that the affidavit failed to satisfy the criteria set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We disagree.

Under *Aguilar,* two conditions must be met in order for an affidavit based on the statements of an undisclosed informant to support a search warrant:

> * * * the magistrate must ·be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable'.

378 U.S. at 114, 84 S.Ct. at 1514; *see United States v. Marihart,* 472 F.2d 809 (8th Cir. 1972) (en banc).

In this case, the informant's statement that she had personally observed the tablets at defendant's residence clearly satisfies the first of these requirements. *See United States v. Harris,* 403 U.S. 573, 578–79, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (opinion of Burger, C. J.). Moreover, Boulger's unequivocal attestation to the informant's reliability, note 7 *supra,* leaves no room for doubt that the additional comment was nothing more than it appears to be on its face— an observation that other contraband is often sold as THC. *See United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) ("affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion"). *Aguilar's* second requirement is thus also satisfied.

Gavic contends in the alternative that, notwithstanding the reliability of the informant herself, her identification of the tablets as THC was predicat-

---

**7.** "The informant has provided your affiant with information concerning controlled substances on three different occasions within the last three months. On each occasion a search

was conducted pursuant to the information, and controlled substances were found on each occasion. Among the drugs found using the information of this informant was cocaine."

ed on a statement of an occupant and, since nothing in the affidavit attested to the occupant's own reliability, the accuracy of the information upon which the warrant was issued was open to question. In our view, however, a statement that there is a controlled substance on the premises by an occupant thereof is sufficiently adverse to his penal interest to create an inference of reliability.[8] *See United States v. Harris, supra,* 403 U.S. at 583–85, 91 S.Ct. 2075; *United States v. Carmichael,* 489 F.2d 983, 986–87 (7th Cir. 1973) (en banc); Advisory Committee's Notes to Rule 804(b)(3), Federal Rules of Evidence for United States Courts and Magistrates, Pub.L. No. 93–595 (Jan. 2, 1975). We are satisfied that the affidavit met the ultimate test: whether it demonstrated adequate probable cause to support the issuance of a search warrant. *United States v. Harris, supra; United States v. Marihart, supra; see United States v. Kleve,* 465 F.2d 187 (8th Cir. 1972); *United States v. Smith,* 462 F.2d 456, 458–60 (8th Cir. 1972); *United States v. DeCesaro,* 502 F.2d 604 (7th Cir. 1974); *United States v. Carmichael, supra; United States v. McCoy,* 478 F.2d 176, 179 (10th Cir.), *cert. denied,* 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973).

### III. CONSENT TO SEARCH THE AUTOMOBILE

We turn next to Gavic's charge that his written consent to the officers' search of his automobile was not freely and voluntarily given.

Both parties have briefed this issue as one governed by the test of voluntariness announced in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). While the holding in *Bustamonte* was narrowly tied to the noncustodial search in question there, 412 U.S. at 248, 93 S.Ct. 2041, we think the analysis therein has application to the custodial search before us in this appeal. *See United States v. Campbell,* 510 F.2d 967 (4th Cir. 1975); *Hayes v. Cady,* 500 F.2d 1212 (7th Cir. 1974), *cert. denied,* 419 U.S. 1058, 95 S.Ct. 642, 42 L.Ed.2d 655 (1975); *United States v. Heimforth,* 493 F.2d 970 (9th Cir.), *cert. denied,* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974). *Bustamonte* teaches that the voluntariness with which a consent to search is given "is a question of fact to be determined from all the circumstances * · * *." 412 U.S. at 248–49, 93 S.Ct. at 2059.

■ On the record before us it is undisputed that prior to the search Gavic was given a form advising him of his rights, including his right not to consent to the search. It is also undisputed that Gavic signed the consent form after the agents had discovered in his residence various controlled substances of which he had admitted possession, had arrested him and had advised him that they would procure a warrant to search his automobile should he fail to consent to such a search. As we noted above, there is a conflict on the record regarding whether the agents also informed Gavic that his car would be towed and broken into if he withheld consent. The judge at the suppression hearing resolved this evidentiary conflict in favor of the government, emphasizing Gavic's past criminal record and the self-serving nature of his testimony. Judge Cooper's determination that the consent was voluntary under all of the circumstances, *cf. United States v. Agosto,* 502 F.2d 612

---

**8.** The identification of the tablets on the premises as a controlled substance was a statement against the occupant's penal interest because it at least implicated him in the crime of constructive possession of the contraband. *See United States v. Hutchinson,* 488 F.2d 484, 488–89 (8th Cir. 1973), *cert. denied sub nom. Ennis v. United States,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). This implication was sufficient since only the probability, and not a prima facie showing, of criminal activity is required to establish probable cause. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Kleve,* 465 F.2d 187, 193 (8th Cir. 1972); *see United States v. Harris,* 403 U.S. 573, 584, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Brinegar v. United States,* 338 U.S. 160, 174–75, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

**1352**

(9th Cir. 1974), and cases cited therein, must stand as not clearly erroneous. *See United States v. Watson,* 459 F.2d 588 (8th Cir. 1972); *Kilcrease v. United States,* 457 F.2d 1328 (8th Cir. 1972).

## IV. MONOTYPIC VERSUS POLY-TYPIC NATURE OF CANNABIS

As the result of a stipulation entered prior to trial, the only issue for the jury was whether the evidence seized from Gavic's home and his car was in fact a controlled substance, marijuana. The trial court rejected Gavic's offer of proof that the genus "marijuana" is polytypic rather than monotypic, that in defining "controlled substances" Congress had outlawed only one species—Cannabis sativa L.[9]—and that the government was unable to prove that the substance seized from him was Cannabis sativa L. In this appeal, he makes the same argument, assigning error to Judge Cooper's refusal to permit the defense counsel to cross-examine the government's expert witness regarding the polytypic nature of marijuana and to make an offer of proof of the legal authority in support of his defense.

█ Six other federal appellate courts have considered the issue raised by appellant. All have resolved this issue adversely to appellant. *United States v. Walton,* 514 F.2d 201 (D.C.Cir. 1975); *United States v. Honneus,* 508 F.2d 566 (1st Cir. 1974); *United States v. Sifuentes,* 504 F.2d 845 (4th Cir. 1974); *United States v. Gaines,* 489 F.2d 690 (5th Cir. 1974); *United States v. Rothberg,* 480 F.2d 534 (2d Cir.), *cert. denied,* 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); *United States v. Moore,* 446 F.2d 448 (3d Cir. 1971), *cert. denied,* 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820 (1972).[10] *Contra, United States v. Le-*

*wallen,* 385 F.Supp. 1140 (W.D.Wis.1974). We find the reasoning of the First Circuit in *United States v. Honneus, supra,* particularly persuasive and instructive:

> We are persuaded that Congress adopted 'Cannabis sativa L.' believing it to be the term that scientists used to embrace all marihuana-producing Cannabis; the other named sorts were not seen as separate Cannabis species. Linnaeus had listed but the one species, and appellant's own expert concedes that until recently the monotypic view has been the 'usually accepted' one. This is not to try to refute Dr. Schultes' [the expert's] present view. The issue is not whether marihuana is monotypic or polytypic but what Congress meant when it used the term 'Cannabis sativa L.'. We hold that the district court's ruling and exclusion of Dr. Schultes' testimony [concerning the polytypic nature of marijuana] were correct.
>
> A remaining question is whether the definition was adequate to forewarn Honneus of the crimes for which he was later charged. We think it was. Right or wrong, the monotypic classification has had considerable currency until very recently at least; use of 'Cannabis sativa L.' was, we think, sufficient to put a procurer on notice that he acted at his peril, * * * and of course there is no evidence whatever that Honneus sought only 'indica' rather than 'sativa' or believed that he was acting legally.

508 F.2d at 575 [footnote omitted].

We adopt this reasoning, which controls on the facts before us. In view of our rejection of the legal theory on which Gavic premised this portion of his defense, we discern no prejudicial error

---

9. 21 U.S.C. § 841(a)(1) prohibits possession with intent to distribute "a controlled substance." Section 802(15) of the same title defines marijuana as "all parts of the plant Cannabis sativa L. * * *." Some scientists, however, speak of three separate species of cannabis, *e. g.,* sativa, indica and ruderalis. *See United States v. Honneus,* 508 F.2d 566, 574 (1st Cir. 1974).

10. In one of our own cases, a related contention was raised but was resolved on the basis of the evidence in the record, without a decision on the precise legal issue presented here. *United States v. Burden,* 497 F.2d 385 (8th Cir. 1974).

in the challenged evidentiary rulings below.

## V. THE CHEMICAL TESTS

During cross-examination of the government's expert witness, who had testified on direct concerning the results of chemical testing of the substance seized from Gavic's home and car, defense counsel moved to strike all such testimony on the ground that the government had failed to comply with the "best evidence rule" because the test results themselves (thin layer chromatographic plates) had not been offered as evidence. The trial judge denied the motion to strike. Gavic assigns error to that ruling in this appeal, relying primarily on cases requiring a medical expert's opinion testimony interpreting an x-ray to be accompanied by production of the x-ray itself. *Gay v. United States,* 118 F.2d 160 (7th Cir. 1941); *e. g., Fuller v. Lemmons,* 434 P.2d 145 (Okla.1967).

■ In this circuit, we have repeatedly held that the admissibility of expert testimony lies within the sound discretion of the trial judge. *See Gisriel v. Quinn-Moore Oil Corp.,* 517 F.2d 699 (8th Cir. 1975); *Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1263, 1272 (8th Cir. 1975); *Mears v. Olin,* No. 74–1565 (8th Cir., Feb. 28, 1975); *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974).

■ There was no abuse of that discretion here. It is conceded that Gavic did not move to strike the testimony in question until the government had completed its direct examination of the witness and cross-examination was well under way. In *Chicago & N. W. Ry. v. Green,* 164 F.2d 55, 63 (8th

Cir. 1947), this court held that, where the defendant had failed to object promptly to secondary evidence of the contents of a document after such evidence had already been elicited twice at trial, it was within the trial court's discretion to allow the testimony. *See also Goetsch v. State,* 45 Wis.2d 285, 172 N.W.2d 688 (1969) (where not requested by defendant, "best evidence rule" does not require prosecution to introduce original tests whose value lay wholly in expert witnesses' interpretation thereof).

The Federal Rules of Evidence, though not in effect at the time of this trial, provide additional support for upholding Judge Cooper's ruling.[11] Rule 703 [12] provides:

*Bases of Opinion Testimony by Experts*

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The test slides were highly perishable. Moreover, the defense expert did not dispute the readings but rather the reliability of such tests. We find no prejudicial error here.

## VI. IMPARTIAL TRIAL

■ We have carefully scrutinized the record and reject appellant's contention that he was denied a fair and impartial trial by the District Judge. The numerous allegations in support of this claim [13] center upon the court's instruc-

---

11. Federal Rules of Evidence for United States Courts and Magistrates, Pub.L. No. 93–595 (Jan. 2, 1975), effective July 1, 1975.

12. The Advisory Committee's Notes on Rule 1002 (Requirement of Original) expressly recognize the limiting effect of Rule 703:

It should be noted, however, that Rule 703, *supra,* allows an expert to give an opinion based on matters not in evidence, and the

present rule must be read as being limited accordingly in its application.

13. In his brief, appellant contends that Judge Cooper improperly used hypothetical examples, reached conclusions unwarranted by the evidence, assumed an adversarial role before the jury, made material factual errors in the charge and discussed the option of probation or parole in the event of conviction.

tions to the jury. The trial judge summed up the evidence of the government and the defendant upon the single issue in the case: whether the substance seized from the defendant was in fact marijuana. When a federal judge undertakes to comment upon the evidence, as he has a right to do, he must present the evidence on both sides of the case and not concentrate on the strength of one side or the weakness of the other. In other words, he must be impartial. *Gant v. United States,* 506 F.2d 518 (8th Cir. 1974); *United States v. Cole,* 453 F.2d 902 (8th Cir.), *cert. denied,* 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *Scruggs v. United States,* 450 F.2d 359 (8th Cir. 1971), *cert. denied sub ·nom. Chambers v. United States,* 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972); *United States v. De Pugh,* 434 F.2d 548 (8th Cir. 1970), *cert. denied,* 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971); *United States v. Liddy,* 509 F.2d 428, 438 (D.C.Cir. 1974). Our reading of the instructions convinces as that this requirement was fully met.

Moreover, the District Judge repeatedly charged the jury that it was their own recollection of the evidence and their own evaluation of the expert witnesses which should guide them in their deliberations.[14] *See United States v. Williams,* 505 F.2d 947, 949 (8th Cir. 1974), and cases cited therein. He cautioned the jury that the indictment was not evidence of guilt and instructed them in detail on the presumption of innocence and the government's burden of proving guilt beyond reasonable doubt.

Appellant contends that at least twice during his charge the trial court advised the jury that possession of marijuana was conceded. A fair reading of those portions of the instructions is that the judge was speaking of the fact of possession, not the nature of the substance. He read the stipulation to the jury which made clear, moreover, that defendant only agreed that he *believed* the substance to be marijuana. Finally, he repeatedly reminded the jury that whether the substance was marijuana was the disputed issue in the case.[15]

14. It is your estimate of the testimony, given by the witnesses, each of them, that is controlling; not that advanced by the attorneys or suggested by anybody. They have a right to give you their interpretation of the facts; you are the sole judges of the facts, and it is for you to estimate the testimony of the witnesses.

In sizing up a witness, in your search for the truth, you should be guided by your plain, everyday common sense. That is what makes you all-important. [Tr. at 342]

* * * * * *

* * * These are factors that you weigh. You may be impressed or unimpressed. I am calling upon you to gather all of it and ask yourself whether or not you are satisfied that the test employed by the government, through Mr. Clark, is a credible test, sufficient to satisfy you beyond a reasonable doubt that the substance seized is in fact marijuana. If that test fails to convince you, throw it out and acquit the defendant. [Tr. at 344]

* * * * * *

It is your task to evaluate this testimony, if I am reciting it in accordance with your recollection, and if I haven't, you chuck it out, throw out whatever I have said because it is based on evidence that is not in accord with your recollection. It is your task to

evaluate the testimony and give it the weight you think it deserves: Mr. Clark's testimony based primarily on his personal experience as a chemist for the Drug Enforcement Administration, and that of Dr. Fullerton, a university professor of chemistry, with extensive knowledge of the research conducted in his scientific field. [Tr. at 348]

15. And, as counsel himself has told you, counsel for the defense, the stipulation is an admission of everything by the defendant that the Government would otherwise have had to prove, except that one element, and that is, despite the defendant's belief that the substance was marijuana, the defendant puts in issue whether it was in truth, and in fact marijuana; and demands, as he has a right to, that the government prove it was marijuana, beyond a reasonable doubt.

That has been admitted by counsel for the defense, that that is the only issue before you. [Tr. at 337–38]

* * * * * *

Accordingly, you must regard the first two elements, possession and intent, as proven, and concern yourselves only with the third element—whether the substance in Government Exhibits 1 through 6 in evidence is in fact marijuana. [Tr. at 340]

 Appellant's claim that the trial court assumed a partisan posture and diminished the effectiveness of the cross-examination of the government's witness is likewise without merit. A trial judge is more than an umpire. *United States v. Liddy, supra,* 509 F.2d at 438. His duty is to see that truth is not withheld from the trier of fact, consistent with the rules of evidence. In this case the intervention of the trial judge in pursuit of clarity was neither partial to the government nor prejudicial to the defendant. We find no reversible error here.

Affirmed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. In my view, the majority errs in holding that the affidavit was sufficient to justify the issuance of the warrant to search the defendant's home. Certainly, the reliable informant's statement that she observed a large number of brownish tablets in the apartment was not sufficient in and of itself to establish probable cause for believing that the tablets were marijuana. Nor was the additional statement by an occupant of the home to the informant that the tablets were "THC" sufficient for that purpose. The majority justifies crediting the statement on the theory that it was adverse to the penal interest of the declarant, *i. e.,* there was probable cause for believing that the occupant was in constructive possession of marijuana and thus implicated in the crime.

This theory assumes not only that the occupant knew the tablets were marijuana but also that every occupant of a dwelling in which contraband is found is probably guilty of possessing it. None of the cases cited by the majority support the latter proposition. In *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the declarant was a purchaser of illicit materials. In *United States v. Hutchinson,* 488 F.2d 484 (8th Cir. 1973), the declarant was more than an occupant. She was the wife of the defendant and had full knowledge of prior narcotics transactions between her husband and the government agent. Additionally, she "in words and conduct assumed more than a passive role."

Nor is there support for the majority view in Rule 804(b)(3) of the Federal Rules of Evidence for United States Courts and Magistrates, Pub.L. No. 93–595 (Jan. 2, 1975). That rule requires that a statement to be admissible must so far tend to subject the speaker to criminal liability that a reasonable person in the speaker's position would not have made the statement unless he or she believed it to be true. Here, there is nothing in the affidavit that would indicate that this occupant was one who reasonably believed that he or she possessed the tablets, let alone believe that criminal liability would attach for their possession.