**Diane LEE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10884.**

District of Columbia Court of Appeals.

Argued Nov. 17, 1977.

Decided Feb. 24, 1978.

---

David J. Schmit, Washington, D. C., appointed by the court, for appellant.

Edward D. Ross, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, and Richard C. Otto, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, KERN, Associate Judge, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

Appellant was found guilty by a jury of possession of heroin in violation of D.C.Code 1973, § 33–402; and here she makes two claims of error: one relating to the testimony of the government's expert witness and the other relating to the right to a speedy trial.

An undercover police officer testified he went to appellant's apartment and attempted to purchase from her a drug known as Preludin or "bam." She told him she had stopped "doing the bam" but had some good "boy," a term used for heroin. He asked how good it was and was told it was "dynamite stuff." In return for $20.00 she gave him one tinfoil containing a white powder. A chemist, employed by the Drug Enforcement Administration of the Department of Justice, testified he analyzed the powder in the tinfoil and concluded that heroin was present.

The government's expert held B.S. and M.S. degrees in chemistry, with special training in analytical chemistry. He had made approximately 3,000 analyses on suspected heroin and had testified in court as an expert approximately 100 times. Although he did not recall specifically making the test on the powder purchased from appellant, as it had occurred approximately a year before trial, he was able to say from his records that he did test the powder and that the test was positive for heroin. He testified at length and was cross-examined at length as to the five tests he had conducted, namely, the Marquis and Froehde tests, thin layer chromatography test, microscopic examination, and gas chromatography.

At the conclusion of the expert's testimony, appellant moved to strike the testimony concerning the tests on the ground that the witness "had no specific recall of these tests," his notes only "indicating positive results with no detail," and thus counsel was "unable to cross-examine him on the specific results of these particular tests." This motion was denied.

Appellant did not testify and she called only one witness, a chemist, who testified as to various tests for drugs, particularly as to heroin, and gave his opinion as to the accuracy of such tests and the possibility of erroneous conclusions to be drawn from them.

In this court appellant concedes the qualifications of the government's expert and "the competency of the testing scheme", but argues that because the expert could not recall performing the specific tests and his records provided "no descriptive details," and only indicated the tests that had been performed, "effective cross-examination was impossible" and consequently it was error not to strike his testimony.

In support of her proposition appellant relies heavily on cases relating to the testimony of psychiatrists concerning sanity or insanity, such as *United States v. Ashe*, 155 U.S.App.D.C. 457, 464, 478 F.2d 661, 669 (1973), where it was said: "The expert must be prepared to state the bases for his conclusion . . ."; *United States v. Brawner*, 153 U.S.App.D.C. 1, 26, 471 F.2d 969, 994 (1972), where reference was made to "our many decisions contemplating that expert testimony on this subject will be accompanied by presentation of the facts and premises underlying the opinions and conclusions of the experts . . .;" and *Bethea v. United States*, D.C.App., 365 A.2d 64, 81 (1976), where this court said: "The expert must inform the jury as to the bases for his conclusions as well as the nature of the disability, its characteristics, and its symptomatology."

There is a vast difference between an expert's opinion as to sanity and an expert's testimony as to the results of a chemical test. Insanity is not a precise term; there are different types and degrees of insanity; and frequently experts are in disagreement as to the sanity or insanity of an individual. On the other hand, where, as in this case, a standard chemical test is performed by a competent expert, there is little room for disagreement as to the result. An expert's testimony as to an individual's sanity or insanity is based largely on his subjective opinion; but here the expert testified to the result of a standard test. Of course, he could have been mistaken in his observation, but that is true of any witness who testifies as to what he saw or heard.

■ We agree that "an expert witness may not deliver his opinion in a factual vacuum,"[1] but here the witness did not make the bare statement that the powder contained heroin. He stated the bases for his conclusion by describing in detail the tests on which his conclusion was reached. His lack of specific recall could affect his credibility with the jury, but did not render his testimony inadmissible.[2]

■ Appellant's second contention is that she was denied her right to a speedy trial. She was arrested on January 3, 1975 and was not tried until March 9, 1976, a delay of approximately 14 months. Delay of a year or more gives a prima facie showing of merit to appellant's claim. *Branch v. United States*, D.C.App., 372 A.2d 998 (1977); and we must apply the balancing test of *Barker v. Wingo*, 407 U.S. 514, 91 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which requires weighing the length of the delay, the cause of the delay, the timeliness of defendant's demand for trial and any showing of prejudice from the delay. *United States v. Perkins*, D.C.App., 374 A.2d 882 (1977). First, we note that at least three months of the delay was due to appellant's failure to obtain counsel and her failure on two occasions to appear on the date set for trial. The remainder of the delay must be charged to the prosecution, but such delay was due to crowded court calendars and administrative difficulties and was not deliberate delay. Almost a year elapsed before appellant first moved to dismiss for lack of speedy trial. This motion was de-

---

1. *Mehlman v. Powell*, Md., 378 A.2d 1121, 1125 (1977).

2. *See United States v. Gavic*, 520 F.2d 1346 (8th Cir. 1975); *United States v. Curbelo*, 423 F.2d 1204 (5th Cir. 1970); *United States v. Haynes*, 398 F.2d 980 (2d Cir. 1968); *United States v. Agueci*, 310 F.2d 817 (2d Cir. 1962).

nied and two months later the motion was renewed. It was denied and trial took place the following month.

We see no showing of prejudice to appellant caused by the delay. Except for a few days following her arrest, appellant was on pretrial release. Her only witness was an expert and his testimony could not have been weakened or damaged by the delay. It may be argued that the delay was the cause of the government expert's failure to recall specifically the tests he made, but that is pure speculation. The expert had made 3,000 or more analyses on suspected heroin and it is doubtful he could recall any particular test after even a brief interval.

*Affirmed.*