**UNITED STATES of America**

v.

**Steve A. WALTON, Appellant.**

**No. 74–1790.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 9, 1975.

Decided Jan. 23, 1975.

---

Stuart F. Johnson, Washington, D. C. (appointed by this Court), for appellant.

David E. Wilson, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. Rutherford, Bernard J. Panetta, II, and Jeffrey T. Demerath, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and ROBB, Circuit Judges.

Opinion for the Court filed by Chief Judge BAZELON.

BAZELON, Chief Judge:

Steve Walton was tried before the District Court and convicted on June 25, 1974 of one count of unlawful distribution of marijuana.[1] Walton concedes that he sold at least two pounds of marijuana to undercover police officers in the District of Columbia. His sole contention on this appeal is that the marijuana he possessed and sold to the officers was not necessarily species Cannabis sativa L., which is, he argues, the only species of marijuana the distribution of which is outlawed by federal and local law in the District of Columbia. Walton is indeed correct that 21 U.S.C. § 802(15) (1970) does define marijuana as Cannabis sativa L. but this fact, we think is not sufficient to support Walton's contention that Congress meant to outlaw the distribution of only one species of marijuana.

Walton's argument is initially premised on recent claims that marijuana is a so-called "polytypical" plant with more than one species presently extant.[2] According to the expert witness deposed by Walton, some botanists recognize four species of marijuana other than sativa L., *viz.* Cannabis indica, Cannabis ruderalis, Cannabis gigantea and a species not yet named but located in Afghanistan.[3] The government and some courts[4] challenge this position, and Walton admits that expert opinion is not uniform on the issue. Since the District Court did not make findings of fact on the point and rejected Walton's proffer of proof, we must assume for purposes of decision that more than one species of marijuana are extant.

We thus must consider whether the Congress meant to prohibit the distribution of all species of marijuana or only the distribution of species Cannabis sativa L. We first note the concession by Walton's expert that all the species of marijuana possess the toxic agent "tetrahydrocannabinol", popularly known as THC.[5] It is conceded that the "hallucinogenic" or euphoric effects produced by this agent led to the Congressional ban on possession, importation and distribution of marijuana. The most cursory reading of the legislative history of the various provisions outlawing marijuana permit no other conclusion. Thus, Walton's argument is that Congress meant to outlaw the euphoric effects of the sativa L. species but not the euphoric effect of other species. This result seems manifestly unreasonable and furthermore could raise the most serious equal protection problems if it were adopted, *i. e.* an individual convicted for distribution of sativa L. could state with more than a little justification that no legitimate legislative purpose permits the government to jail persons who obtain a THC "high"

---

1. See 21 U.S.C. § 841(a) (1970). Walton was also charged with a violation of D.C.Code, tit. 33, § 402 (1973), but that count was dismissed at the government's request. Walton was sentenced to three years' probation.

2. See Deposition of James L. Reveal, at 46–59, United States v. Walton, Crim.No. 74–140 (D.D.C. filed June 25, 1974); Kurzman & Fullerton, Critical Evaluation of Forensic Analysis:

The Misidentification of Marijuana, 3 Contemp.Drug Prob.Q. 291–344 (Fall 1974).

3. Deposition, *supra* note 2, at 46.

4. See *id.* at 79–81; United States v. Moore, 446 F.2d 448, 450 (3d Cir. 1971), *citing* Leary v. United States, 395 U.S. 6, 50, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

5. Deposition, *supra* note 2, at 57–60.

from sativa L. but to not prosecute persons who obtain the exact same "high" from another species. Moreover, Walton's expert concedes that at present there is no reliable biochemical or spectrographic method for distinguishing between the various species of marijuana.[6] Thus, unless the government has access to the growing plant, an unlikely situation, it can not at present prove that a given defendant possesses one kind of marijuana or another. It may be that the government has the capacity to develop a method but since Congress did not have the benefit of any such method when it enacted the statute in issue here, one must certainly pause to consider why Congress would enact a law the violations of which could not be proven on the basis of present knowledge. Even if Congress did have such a method, it is apparently conceded that only citizens with expert botanical knowledge could distinguish between the various species of marijuana. This suggests a serious due process question: could the government prosecute an individual for possession of sativa L. when there are no means whereby the average citizen can distinguish between sativa L. and other species to thus conform his conduct to the requirements of the law? It presses us to extremes to hold that Congress would enact a law the violations of which are not detectable to the group of citizens to whom the law is addressed.

■ With the anomalous consequences of acceptance of Walton's argument in mind, we turn to the legislative history for guidance. The law under which Walton was convicted was enacted as part of the Controlled Substances Act of 1970,[7] but the definition of marijuana in that Act was carried forward without comment from the Marijuana Tax Act of 1937.[8] Looking at the legislative history of this latter law, we find that the definition of marijuana was intended to include those parts of marijuana which contain THC and to exclude those parts which do not.[9] Furthermore, there was no testimony that we have been able to locate before the Congress that marijuana was anything other than monotypical and there is no discussion in the Congressional reports of different species of marijuana. The references to the definition of marijuana in the hearings all either indicate that the witnesses believed marijuana was monotypical or that the term sativa L. encompassed all marijuana including that known as Cannabis indica.[10] Walton's own evidence indicates that the scientific community in this country did not become aware of the possible polytypical status of marijuana until the late 1960's.[11] There is no evidence that this new knowledge was brought to the attention of Congress in 1970. The legislative history is absolutely clear that Congress meant to outlaw all plants popularly known as marijuana

6. *Id.* at 57–64, 68–70.

7. *See* H.R.Rep.No.91–1444, 91st Cong., 2d Sess. pt. 1, at 29, 31, U.S.Code Cong. & Admin.News, 1970, p. 4566 (1970).

8. Act of August 2, 1937, ch. 533, § 7(a), (b), (c), 50 Stat. 551. This definition is also incorporated in D.C.Code, tit. 33, § 401(m) (1973) and in 26 U.S.C. § 4761(2) (1970) and is, as noted in the text, codified in 21 U.S.C. § 802(15) (1970).

9. *See* H.R.Rep.No.792, 75th Cong., 1st Sess. 3–4 (1937); S.Rep.No.900, 75th Cong., 1st Sess. 4 (1937); 81 Cong.Rec. 5690 (1937).

10. *See Hearings on H.R. 6906 Before the Senate Comm. on Finance,* 75th Cong., 1st Sess. 14, 23–24 (1937); *Hearings on H.R. 6385 Before the House Comm. on Ways and Means,* 75th Cong., 1st Sess. 18–42, 55, 60–61, 70–71, 76–78, 90, 122 (1937).

11. *See* Deposition, *supra* note 2, at 55–56, 76–79. The opinions in United States v. Collier, Crim.No. 43604–73 (D.C.Super. June 14, 1974), at 6–8 (mimeo); United States v. Lewallen, 385 F.Supp. 1140 (W.D.Wis.1974) and United States v. One 1966 Chevrolet Sedan, 14 Crim. L.Rep. 2387 (S.D.Fla.1974) all rely in part on alleged confusion as to the definition of marijuana in 1937 to reach the dubious conclusion that an ambiguity exists as to what Congress intended to proscribe. The confusion such as it was does not in the least indicate that Congress realized it was limiting the scope of the definition of marijuana or even create an ambiguity in that regard. Indeed, an opposite *conclusion seems far more probable: Congress* adopted what it believed was an all-encompassing definition of marijuana and today finds that definition technically suspect *because* of the confusion that may have existed in 1937.

to the extent those plants possessed THC. Every federal appeals court which has considered the point has reached a similar conclusion.[12]

■ Walton places principal reliance ' on the well-settled rule that criminal statutes are to be strictly construed in favor of the accused.[13] The two federal district court cases and the one District of Columbia Superior Court case which have accepted Walton's argument also rely heavily on this rule of statutory construction.[14] We, of course, have no dispute with this rule but do not think it is to be applied in a case such as we confront here. This salutory rule of construction is designed as a presumptive method of resolving *ambiguities* in a statutory proscription and unless an ambiguity is found to exist, this rule of construction may not be used to frustrate legislative intent.[15] Here we have no ambiguity in the purpose and reach of the statute prohibiting the distribution of marijuana. As stated above, the clear purpose of the law is to proscribe the euphoric effect of THC and there is not one iota of evidence that Congress meant to leave untouched the euphoric effect produced by other species of marijuana. The use of the term Cannabis sativa L. instead of the term Cannabis is not ambiguous when one considers the

fact that Congress was presented with no evidence that there were species of marijuana which were not technically sativa L. but which produced the same effect. The legislative history conclusively demonstrates that Congress believed it was outlawing all marijuana which contained THC. The fact, averted to by Walton and some courts, that expert opinion did exist that marijuana was polytypical at the time Congress passed the Marijuana Tax Act, is of no relevance to the intent of Congress since the fact was not popularly known[16] and since Congress is not held in the process of statutory construction to what it could have known but to what it did in fact know. The lack of ambiguity in this case may be profitably contrasted with the ambiguity found in United States v. Moore, No. 73–1192, 164 U.S.App.D.C. 319, 505 F.2d 426 (1974). There the Court averted to evidence of Congressional awareness of and action directed in part to the result which the defendant's version of the statute in issue would produce. Furthermore, acceptance of the defendant's proposed interpretation did not, it was held, produce the absurd consequences that acceptance of Walton's proposed interpretation would inevitably produce.

■ We note in conclusion that many rules of statutory construction place the

---

**12.** *See* United States v. Honneus, 508 F.2d 566 (1st Cir. 1974); United States v. Kinsey, 505 F.2d 1354 (2d Cir. 1974); United States v. Gaines, 489 F.2d 690 (5th Cir. 1974); United States v. Rothberg, 480 F.2d 534 (2d Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973), aff'g, 351 F.Supp. 1115 (E.D.N.Y. 1972); United States v. Moore, 446 F.2d 448 (3d Cir. 1971), aff'g, 330 F.Supp. 684 (E.D.Pa. 1970). *See also* State v. Romero, 74 N.M. 642, 397 P.2d 26 (1964); People v. Savage, 64 Cal. App.2d 314, 148 P.2d 654 (1944); Martinez v. People, 160 Colo. 333, 417 P.2d 485 (1966); State v. Alley, 263 A.2d 66 (Me.1970); State v. Allison, 466 S.W.2d 712 (Mo.1971); State v. Economy, 61 Nev. 394, 130 P.2d 264 (1942).

**13.** *See* United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); United States v. Moore, No. 73–1192, 164 U.S.App. D.C. 319, 505 F.2d 426 (1974); Zaimi v. United States, 155 U.S.App.D.C. 66, 476 F.2d 511 (1973).

**14.** *See* cases cited note 11 *supra; see also* State v. Sherman, (Vt.Dist.Ct. Aug. 8, 1974);

State v. Porrovicchio, Crim.No. 48611 (Balt.Co. Cir.Ct., Md. May 24, 1974).

**15.** *See* United States v. Moore, No. 73–1192, 164 U.S.App.D.C. 319 at 320, 505 F.2d 426 at 427 (1974); Zaimi v. United States, 155 U.S. App.D.C. 66, 476 F.2d 511, 523–25 (1973).

**16.** *Cf.* Addison v. Holly Hill Fruit Prod., Inc., 322 U.S. 607, 617–18, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944). Unlike the Court in United States v. Collier, Crim.No. 43604–73 (D.C.Super. June 14, 1974), we cannot conclude that the term "marijuana" is a technical term. Instead, it must be defined by reference to its common meaning in the American community. This follows from the admitted fact that the proscription of marijuana is directed to the public at large and not to botanists alone. We further note that the dictionary definition of the term "sativa" is that which "may be sown or planted, cultivated not wild". *See* The Oxford English Dictionary 124 (1933). Thus, the use of the term "sativa" is of no aid to the average citizen in determining the meaning of the statutory term "marijuana."

courts in an unco-operative position with regard to legislative intent. Judicial protection of significant statutory and constitutional interests at times require courts to demand a "clear statement" of intent before deferring to a legislative judgment. There always comes a point, however, where the legislative intent is as clear as is humanly possible and at that point the courts must either defer or exercise their constitutional responsibilities. While Congress with the wisdom of hindsight could have been more clear in its definition of marijuana, we can discover no significant doubt about Congress' purpose in proscribing the distribution of marijuana. Hearing no constitutional objection to this proscription, we are compelled to affirm Walton's conviction.

Affirmed.