David Glenn WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

Donna Sonka WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 50090, 50091.

Court of Criminal Appeals of Texas.

June 25, 1975.

Rehearing Denied July 16, 1975.

Paul W. Leech, Grand Prairie, for appellants.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr. and Jay Ethington, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeals are taken from convictions for possession of marihuana. The record reflects that the offenses in question occurred on May 30, 1973. Appellants, man and wife, were tried jointly before the court on April 19, 1974. Appellants elected to be punished under the Controlled Substances Act and each was assessed punishment of ten days in jail and a fine of $250.00.

At the outset, appellants contend that the court erred in admitting statements made by appellants while under arrest.

Officers, armed with a search warrant, searched a residence at 2006 Ballaway in Grand Prairie at approximately "2:00 or 2:30" on the afternoon of May 30, 1973. The officers observed marihuana plants growing in the back yard. No one was at the residence at this time and the officers, after gaining entrance to the house, found "marijuana seeds in a small Bufferin bottle . . . a water pipe used to smoke marijuana . . . a marijuana pipe." In addition, marihuana seeds were found "in the middle of the table" in the living room. About "4:25, 4:30" the same afternoon, officers returned with warrants of arrest. Mrs. Williams responded to the officers' knock on the door. After the officers identified themselves and gained entrance, the officers asked the appellants who they were. Officer Mezzell testified that he then asked appellants if they lived there, and they responded that they did. Mezzell stated that appellants were not placed under arrest until after they stated that they lived at the address in question. Immediately after appellants were placed under arrest, Williams volunteered, "You don't have to arrest my wife. Those plants belong to me. I planted them and grew them."

Appellants' contention is directed solely to the statement that appellants made in response to the officer's question whether they lived in the house in question.

■ There is nothing in the record to suggest that the officer knew the identity of appellants or who lived in the house. The officer's testimony reflects that he asked the appellants who they were and if they lived at the residence where the marihuana was found. It was not until after appellants had responded to these questions that they were placed under arrest. Thus, the complained-of statement of appellants

was elicited during the investigatory process and prior to arrest. We find that such statements were not made as the result of custodial interrogation, and that the statements of appellants were admissible in evidence against them. Graham v. State, Tex. Cr.App., 486 S.W.2d 92; Sutton v. State, Tex.Cr.App., 419 S.W.2d 857; Miller v. State, Tex.Cr.App., 396 S.W.2d 128; Davis v. State, 168 Tex.Cr.R. 588, 330 S.W.2d 443; Nixon v. State, 406 S.W.2d 445.

Appellants contend the evidence was insufficient to support the convictions in that "the alleged drugs and these defendants were never at the same time in the same place."

■ Possession of narcotics need not be exclusive and evidence which shows that the accused jointly possessed the narcotic with another is sufficient. Curtis v. State, Tex.Cr.App., 519 S.W.2d 883; Simpson v. State, Tex.Cr.App., 486 S.W.2d 807; Valdez v. State, Tex.Cr.App., 481 S.W.2d 904; Shortnacy v. State, Tex.Cr.App., 474 S.W.2d 713; Ochoa v. State, Tex.Cr.App., 444 S.W.2d 763. Mere presence at a place where narcotics or dangerous drugs are possessed does not in itself justify a finding of joint possession. Curtis v. State, supra; Valdez v. State, supra. The evidence must affirmatively link the accused to the contraband in such a manner that a reasonable inference arises that the accused knew of its existence and whereabouts. Curtis v. State, supra; Hineline v. State, Tex.Cr. App., 502 S.W.2d 703; Williams v. State, Tex.Cr.App., 498 S.W.2d 340.

■ In the instant case, the evidence reflects that appellants lived at the residence in question. The record is devoid of evidence that anyone else occupied or had access to the house. Marihuana seeds were found in the middle of a table in the living room, narcotic paraphernalia was in the house, and a bottle containing marihuana seeds was seized in a search of the residence. The marihuana plants in the back yard had been "hoed and cultivated pretty good." Some of the plants were "approximately four foot tall and there was some down to a foot and a half tall." Mezzell stated that the plants were in plain view.

We conclude that the evidence affirmatively links appellants to the marihuana and find that the evidence is sufficient to support the convictions. See Curtis v. State, supra; Valdez v. State, supra.

Appellants contend that the State's proof fails to show "that the evidence was Cannabis sativa L."

A stipulation was entered into between the prosecutor, attorney for appellants, and the two appellants that the chemist who performed the analysis on the substances in question would testify that he

"does not know or have knowledge of the methods for determining the difference between the, either subspecies or subgenus of different types of marijuana and that he is familiar with the term canabus setiva (sic) and canabus endecia (sic), but in his opinion marijuana is all one class and that the evidence seized out here and turned over to him, the evidence in this case that was seized at the Williams' residence and turned over to him was, in fact, marijuana, and he would not say definitely that this evidence here is canabus setiva L (sic)."

While the conduct prosecuted herein occurred before the effective date of the Controlled Substances Act on August 27, 1973, trial was not until April, 1974. Under old code Art. 725b(14), cannabis was listed as a narcotic drug.

Under the Controlled Substances Act, Sec. 1.02(17), marihuana "means the plant Cannabis sativa L." While appellants have not developed any argument under this ground of error, it would appear to be their position that Section 6.01(b) of the Controlled Substances Act, Vernon's Ann.Civ. St., Art. 4476–15, is applicable, which reads:

"Conduct constituting an offense under existing law that is no longer an offense

under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that does not constitute an offense under this Act, the action is dismissed of the effective date of this Act."

Thus, it would appear to be appellants' position that in any prosecution after the effective date of the Controlled Substances Act for possession of marihuana, it is incumbent upon the State to show not only that the substance is marihuana but further that it is Cannabis sativa L. Assuming, arguendo, that appellants' premise that the State's evidence must meet the burden of proof set forth in the new Act, we examine the question presented.

21 U.S.C. Sec. 802(15), provides in part, "The term 'marihuana' means all parts of the plant Cannabis sativa L." A review of the definition of marihuana under the federal code and under the new Controlled Substances Act reflects they are virtually identical.[1]

In United States v. Gaines, 489 F.2d 690 (1974—5th Cir.), it was stated:

"Gaines further urges that it was error for the trial court to refuse to instruct the jury as to the statutory definition of marihuana. We disagree and affirm.

"Noting that the federal statutory definition of marihuana refers only to Cannabis sativa L., Gaines calls our attention to the fact that while the Government's expert chemist agreed that there are three species of marihuana, i. e., Cannabis sativa L., Cannabis indica, and Cannabis ruderalis, the chemist was unable to differentiate between the three. Building upon the premise that Cannabis sativa L. is the only species of marihuana expressly prohibited by statute, Gaines argues that the court's refusal to give the jury an instruction containing the statutory definition of marihuana deprived the jury of considering whether the Government's expert was sufficiently trained and whether he sufficiently tested the substance to prove beyond a reasonable doubt that in fact the substance examined was Cannabis sativa L. and not Cannabis indica.

"The Third Circuit recently considered the issue raised by Gaines and concluded that Cannabis indica is included within the statutory definition of marihuana. United States v. Moore, 3 Cir. 1971, 446 F.2d 448. Similarly, the Second Circuit, while recognizing the possibility that there may be some botanical opinion that Cannabis is polytypal, found that 'there is no question but that the lawmakers, the general public and overwhelming scientific opinion considered that there was only

---

1. Section 1.02(17) of the Controlled Substances Act provides:

" 'Marihuana' means the plant Cannabis sativa L., whether growing or not; the seeds thereof; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, or its seeds. However, it does not include the resin extracted from any part of such plant or any compound, manufacture, salt, derivative, mixture, or preparation of the resin; nor does it include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."

21 U.S.C. Sec. 802(15), provides:

"The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

one species of marihuana . . . Whether this is scientifically exact or not, the statute provided at the time of the offense a sufficient description of what was intended to be prohibited to give notice to all of the illegality of appellant's actions.' United States v. Rothberg, 2 Cir. 1973, 480 F.2d 534, 536.

"We are in full agreement with what has been said by our sister Circuits, and thus find no error in the district court's refusal to instruct the jury with respect to the statutory definition of marihuana."

In United States v. Walton, 514 F.2d 201 (1–23–75), the U. S. Court of Appeals for the D. C. Circuit rejected an argument that the government had failed to meet its burden of proof under 21 U.S.C. Sec. 802(15) in that it was not shown that the marihuana was Cannabis sativa L. The court rejected this contention, stating: "We think the fact that 21 U.S.C. Section 802(15) defines marihuana as Cannabis sativa L. is not sufficient to support the contention that Congress meant to outlaw the distribution of only one species." In *Walton,* it was stated:

"Thus, Walton's argument is that Congress meant to outlaw the euphoric effects of the sativa L. species but not the euphoric effect of other species. This result seems manifestly unreasonable and furthermore could raise the most serious equal protection problems if it were adopted, i. e. an individual convicted for distribution of sativa L. could state with more than a little justification that no legitimate legislative purpose permits the government to jail persons who obtain a THC 'high' from sativa L. but to not prosecute persons who obtain the exact same 'high' from another species. Moreover, Walton's expert concedes that at present there is no reliable biochemical or spectrographic method for distinguishing between the various species of marijuana. Thus, unless the government has access to the growing plant, an unlikely situa-

tion, it can not at present prove that a given defendant possesses one kind of marijuana or another. It may be that the government has the capacity to develop a method but since Congress did not have the benefit of any such method when it enacted the statute in issue here, one must certainly pause to consider why Congress would enact a law the violations of which could not [be] proven on the basis of present knowledge. Even if Congress did have such a method, it is apparently conceded that only citizens with expert botanical knowledge could distinguish between the various species of marijuana. This suggests a serious due process question: could the government prosecute an individual for possession of sativa L. when there are no means whereby the average citizen can distinguish between sativa L. and other species to thus conform his conduct to the requirements of the law? It presses us to extremes to hold that Congress would enact a law the violations of which are not detectable to the group of citizens to whom the law is addressed."

In *Walton,* it was further noted that every federal appeals court which had considered this question had reached a similar conclusion, the following cases being cited. "United States v. Honneus, 508 F.2d 566 (1st Cir. 1974); United States v. Kinsey, 505 F.2d 1354 (2d Cir. 1974); United States v. Gaines, 489 F.2d 690 (5th Cir. 1974); United States v. Rothberg, 480 F.2d 534 (2d Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973), aff'g, 351 F.Supp. 1115 (E.D.N.Y.1972); United States v. Moore, 446 F.2d 448 (3d Cir. 1971), aff'g, 330 F.Supp. 684 (E.D.Pa.1970). See also State v. Romero, 74 N.M. 642, 397 P.2d 26 (1964); People v. Savage, 64 Cal.App.2d 314, 148 P.2d 654 (1944); Martinez v. People, 160 Colo. 333, 417 P.2d 485 (1966); State v. Alley, 263 A.2d 66 (Me.1970); State v. Allison, 466 S.W.2d 712 (Mo.1971); State v. Economy, 61 Nev. 394, 130 P.2d 264 (1942).''

In *Walton,* it was recognized that the definition of marihuana set forth in 21 U.S.C. Sec. 802(15) was carried forward from the Marihuana Tax Act of 1937 without comment. It is further noted in *Walton* that there was no suggestion until the late 1960's that there was a possibility that marihuana had a polytypal status. *Walton* recognizes that such issue is still very much in doubt. We have been unable to find that the Legislature of Texas had the benefit of any method to distinguish between species of marihuana as defined in the Controlled Substances Act when it passed the statute in question. We cannot conclude that the Legislature of Texas intended to limit offenses relating to marihuana to those cases in which it was shown that the species involved was sativa L. and exempt other species, if indeed there are various species of marihuana. We are persuaded by the soundness of the numerous federal appeals court opinions in rejecting identical arguments advanced under a similar statute.

In the instant case, the record contains evidence in the form of a stipulation of the testimony of the chemist that the substance in question was marihuana and the opinion testimony of an officer with a number of years' experience in observing marihuana that the seeds and plants recovered in a search of appellants' house were marihuana. We find this to be sufficient proof that the substance possessed by appellants was marihuana as that term is defined in the Controlled Substances Act. We reject appellants' contention that the evidence was insufficient to sustain the conviction in that the marihuana was not shown to be of the Cannabis sativa L. species.

Appellants' last contention that the evidence is compatible with one of the appellants being guilty but not both has been answered adversely to appellants in their second contention challenging the sufficiency of the evidence to support the conviction.

The judgments are affirmed.

Opinion approved by the Court.