STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RICHARD SIEBOLD, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1975—Decided December 10, 1975.

88

Before Judges HALPERN, CRANE and MICHELS.

*Ms. Randall W. Westreich,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender of New Jersey, attorney).

*Mr. William Welaj,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

HALPERN, P. J. A. D. Defendant was convicted by a jury of the unlawful possession of a controlled dangerous substance (marijuana) with intent to distribute, and of conspiracy to possess marijuana with intent to distribute. He was sentenced on the former conviction to the Youth Reception & Correction Center, Yardville for an indeterminate term with a five-year maximum, and given a concurrent indeterminate term with a three-year maximum on the latter conviction. He appeals from the judgments of conviction.

I

Defendant contends that because the issue of identification was a close one, the trial judge erred in denying his request to compel the prosecutor to disclose the identity of the informer, thus depriving him of a fair trial. The test to be applied in this type of request is set out in *Evid. R.* 36[1] We have carefully considered the record with defendant's argument in mind and find that the mere presence of the informer, under the circumstances here existing, did not require disclosure of the informer's identity. Applying the balancing test enunciated in *Rovario v. United States,* 353 *U. S.* 53, 59, 77 *S. Ct.* 623, 1 *L. Ed.* 2d 639 (1957), and

---

[1] IDENTITY OF INFORMER

A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues. *L.* 1960, *c.* 52, § 28. (*N. J. S. A.* 2A:84A–28.)

*Cashen v. Spann,* 66 *N. J.* 541, 552 (1975), it is obvious the trial judge ruled correctly in holding that the identity of the informer was not essential to a fair determination of the issues involved. The informer was not an active participant in the sale or arrest as was the case in *State v. Roundtree,* 118 *N. J. Super.* 22 (App. Div. 1971). Defendant's request was nothing more than pure speculation that the informer might exculpate him on the issue of identification. *State v. Booker,* 86 *N. J. Super.* 175 (App. Div. 1965). At best, defendant was hopeful the informer might say something which somehow would be helpful to him — such is an insufficient basis for a disclosure. *State v. Oliver,* 50 *N. J.* 39, 42 (1967).

Defendant was identified at the scene of the sale by two trained undercover policemen whose job required them to make careful note of those involved in such criminal activities so they could identify them at trial. In addition, defendant's denial of being present, and the witnesses called to corroborate his alibi, would merely make the informer's testimony, if called as a witness, cumulative, regardless of how he testified. The informer was present, not for the purpose of being a witness at trial, but to allay suspicion with respect to the police. See *Oliver, supra* at 41.

II

Defendant further contends the pretrial identifications made by the two policemen were so inherently unreliable that they violated his right to due process. He premises this argument on a photographic identification made from a high school yearbook and a one-way mirror identification at police headquarters. We disagree.

The use of a one-way mirror for the purposes of pretrial identification, or a one-on-one show up, has been subject to criticism, but absent a showing of something more than just those facts, has been held valid. *Stovall v. Denno,* 388 *U. S.* 293, 301–302, 87 *S. Ct.* 1967, 18 *L. Ed.* 2d 1199 (1967);

*State v. Edge,* 57 *N. J.* 580 (1971). Considering the totality of the circumstances surrounding the pretrial identifications, we find no infirmity in the procedures used. *Neil v. Biggers,* 409 *U. S.* 188, 93 *S. Ct.* 375, 34 *L. Ed.* 2d 401 (1972); *State v. Farrow,* 61 *N. J.* 434 (1972), *cert.* den. 410 *U. S.* 937, 93 *S. Ct.* 1396, 35 *L. Ed.* 2d 602 (1973); *State v. Matlack,* 49 *N. J.* 491 (1967), *cert.* den. 389 *U. S.* 1009, 88 *S. Ct.* 572, 19 *L. Ed.* 2d 606 (1967).

▋ Defendant also argues that the effectiveness of his attorney was undermined because he was at police headquarters when the one-way mirror identification was made, but was not advised thereof. The simple answer is that it occurred during routine police investigation and before formal charges were made against defendant. Under such circumstances, no right to counsel exists. *Kirby v. Illinois,* 406 *U. S.* 682, 688, 92 *S. Ct.* 1877, 32 *L. Ed.* 2d 411 (1972); *State v. Earle,* 60 *N. J.* 550 (1972); *State v. Farrow, supra.*

### III

▋ Even if we were to assume the pretrial identifications were tainted, we are satisfied from our review of this record that the in-court identification was based upon the viewing of defendant by the police at the scene of the crime and, therefore, there was no substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 *U. S.* 377, 384, 88 *S. Ct.* 967, 19 *L. Ed.* 2d 1247 (1968); *State v. Thompson,* 59 *N. J.* 396, 418–419 (1971); *State v. Royster,* 57 *N. J.* 472, 480 (1971), *cert.* den. 404 *U. S.* 910, 92 *S. Ct.* 235, 30 *L. Ed.* 2d 182 (1971).

### IV

▋ We find no merit in defendant's contention that the trial judge erred in (a) denying his motion for a judgment of acquittal for lack of proof that the substance seized was *cannabis sativa L.,* (b) restricting defendant's expert testi-

mony for impeachment purposes only, and (c) charging the jury that *cannabis sativa L.* included all varieties of *cannabis.*

*N. J. S. A.* 24:21–1 *et seq.,* which is New Jersey's Controlled Dangerous Substance Act, is modeled after the Comprehensive Drug Control Act of 1970, adopted by the Federal Government, and found in 21 *U. S. C. A.* § 801 *et seq.* We are satisfied these statutes intended to include all forms of marijuana, regardless of type. See *Leary v. United States,* 395 *U. S.* 6, 50, 89 *S. Ct.* 1532, 23 *L. Ed.* 2d 57 (1969); *United States v. Moore,* 446 *F.* 2d 448 (3 Cir. 1971), *cert.* den. 406 *U. S.* 909, 92 S. Ct. 1617, 31 *L. Ed.* 2d 820 (1972). We need only note that the cases relied on by defendant, decided by the Superior Court of the District of Columbia, have been overruled in principle by *United States v. Johnson,* 333 *A.* 2d 393 (D. C. Ct. of App. 1975) and *United States v. Walton,* 168 U. S. App. D. C. 305, 514 *F.* 2d 201 (D. C. Cir. 1975).

## V

We have examined the entire record, including the presentence report, and conclude that in view of the nature of this offense wherein about 100 pounds of marijuana was involved, evidencing a large illegal operation, the sentences imposed were warranted and no abuse of discretion by the sentencing judge has been shown. *State v. Tyson,* 43 *N. J.* 411, 417 (1964), *cert.* den. 380 *U. S.* 987, 85 S. Ct. 1359, 14 *L. Ed.* 2d 279 (1965).

Affirmed.