STATE of Missouri, Respondent,

v.

Roy MORROW, Appellant.

No. KCD 27605.

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

Lane Harlan, Boonville, for appellant.

John C. Danforth, Atty. Gen., Christopher R. Brewster, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The defendant was convicted of the sale of the controlled substance marihuana in violation of § 195.017, RSMo Laws of 1971, and was sentenced to a term of ten years.

The sale of a controlled substance is prohibited by § 195.020, RSMo Laws of 1971, except as authorized by § 195.010 to § 195.-320. *Marihuana* is listed as a controlled substance in § 195.017(2)(4)(j). The defendant was convicted of the sale of marihuana under the statutory definition of § 195.-010(20), RSMo Laws of 1971:

"Marihuana" means all parts of the plant Cannabis Sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. . . .

The appeal poses the question of the meaning intended by the Legislature for *marihuana*. The defendant contends that this definition prohibits only Cannabis Sativa L., only one of several species of cannabis, thus the burden befell the State to prove that he sold the sativa species of cannabis. The contention continues: since the statute controls over Cannabis Sativa L., the botanical identity of the species actually sold by the defendant was an issue of fact, and thus the rejection of the defense offer of proof that the scientific community recognizes other species of cannabis than sativa was error.[1]

The prosecution undertook to prove that the substance sold by the defendant was marihuana by the testimony of two qualified experts. Dr. James R. Vogt, a chemist,[2] subjected the substance to three tests; the first microscopic, revealed cystolithic hairs indicative of marihuana. The second, the Modified Duquenois test, disclosed the presence of tetrahydrocannabinol [THC], which is the principal psychic ingredient of marihuana. The third test, a thin-layer chromatography, revealed the characteristic color spots of marihuana. The results of these tests proved to Dr. Vogt that the substance under examination was marihuana.

The testimony of Dr. Steve Morris, senior research chemist at the University of Missouri, followed. He had participated in the tests made by Dr. Vogt and he, too, concluded that the substance subjected to analysis contained the plant material marihuana. It was his conclusion that there was no

other plant or vegetable substance which would yield the same results in the combined tests.

It was the sense of these prosecution witnesses [neither of whom was a botanist or taxonomist] that virtually all people believe that there is only one species of the marihuana plant. It was the sense of the offer of proof attempted by Dr. Klein for the defendant, that the science of botany recognizes at least three species of cannabis. [All the witnesses agreed that tetrahydrocannabinol [THC] is the hallucinogenic component of all cannabis]. As we have indicated, the contention here is that whether cannabis is a monotype [a genus of a single species] or a polytype [a genus of more than one species] determines the meaning to be accorded *marihuana* in the statutes which control that substance and, concomitantly, the burden of proof expected of the State for a proper conviction.

 The meaning to be accorded a statute is for the court and not the dialectic of experts. It is always an issue of law for the judge and not one of fact for the jury. *State v. Carter,* 475 S.W.2d 85, 90[4] (Mo. 1972). The question is not what the scientific community understands the definition of *marihuana* in § 195.010(20) to mean, but what the Legislature intended by that enactment.

In *State v. Allison,* 466 S.W.2d 712 (Mo. 1971) the defendant contended there was no statutory authority for seizure under warrant which designated marihuana as the object of the search under a statute which declared cannabis to be an unlawful drug. In response to the contention that under the statutory definition marihuana was not synonymous with cannabis, the Supreme Court said [l. c. 715]:

Looking, again, to a botanical reference— Vol. 2, New Britton & Brown Illustrated

---

1. The defense expert, Dr. William M. Klein, a botanist who specialized in the classification of plants [taxonomy], gave testimony that he was unable to identify the substance sold by the defendant as Cannabis Sativa L. but his profert that other species of cannabis were botanically recognized was denied by the trial court.

2. Associate Director of the Environmental Trace Substance Center at the University of Missouri.

Flora, p. 54—we find that cannabis is a monotypic genus, i. e., a genus with only one species. Cannabis has the common name of marijuana . . . [W]e conclude as a matter of law that marijuana is identical with cannabis . . ."

The court concluded that the search warrant properly issued for the unlawful possession of the narcotic drug cannabis.

The defendant argues, however, that *Allison* was decided under the statutory definition [§ 195.010(5), RSMo 1969]: " 'Cannabis' *includes* all parts of the plant Cannabis Sativa L. . . .",[3] while the statute under which he was convicted [§ 195.010(20), RSMo Laws of 1971] defines the substance: " 'Marihuana' *means* all parts of the plant Cannabis Sativa L. . . ." [Both emphases added.] It is also true, as the defendant offered to prove, that a recent body of scientific opinion regards cannabis as a polytype which includes species other than sativa.

The definition of *marihuana* upon which the conviction stands is a component of the Uniform Controlled Substances Act [§§ 195.010 through 195.320] adopted by our Legislature in 1971 to supplant the predecessor Uniform Narcotic Drug Act. It was the purpose of the Uniform Controlled Substances Act to establish a coordinated and codified system of drug control between the laws of the United States and the several States, to include classifications and definitions of narcotics, as a control of the burgeoning drug abuse. [Uniform Controlled Substances Act, Commissioners' Prefatory Note.] As a means to that end, the Act [including the Missouri version] adopts the essential provisions of the federal Comprehensive Drug Abuse Prevention and Control Act of 1970 [21 U.S.C.A. § 801 et seq.] and includes the exact definition of *marihuana*

found in the congressional enactment. That definition, in turn, was taken from the Marihuana Tax Act of 1937 [26 U.S.C.A. § 4761].

We may be guided, therefore, by the decisions of the federal courts as to what Congress intended by the legislation as well as by the courts of other jurisdictions which have construed provisions of the Uniform Act identical to those Missouri has adopted. *State v. Anderson,* 515 S.W.2d 534, 539[4] (Mo. banc 1974).

The eight federal circuits which have considered the question[4] are of unanimous opinion that the Congress treated cannabis sativa as a synonym for marihuana or any other name by which the cannabis plant might be known. That a scientific view has since emerged which challenges the premise upon which the statute stands cannot affect the intention of the lawmaker.

The congressional enactment was on information that there was only one species of marihuana. Congress was told during the hearings on the 1970 Drug Abuse Control Amendments that cannabis is a monotype and that all marihuana is derived from the plant Cannabis Sativa L. There is no indication that Congress had any contrary information. *United States v. Walton,* 168 U.S.App.D.C. 305, 514 F.2d 201, 203[2] (1975). The ardent debate of scientists which now suggests another view is irrelevant to the legislative intent discerned from the enactment itself. "We are persuaded that Congress adopted 'Cannabis sativa L.' believing it to be the term that scientists used to embrace all marihuana-producing Cannabis; the other named sorts were not seen as separate Cannabis species. . . . The issue is not whether marihuana is monotypic or polytypic but what Congress meant when it used the term 'Cannabis

---

3. As a matter of plant classification, *Cannabis* identifies the genus, *Sativa* gives the species and L. identifies Linnaeus, the pre-eminent naturalist who invented the system of classification.

4. *United States v. Honneus,* 508 F.2d 566 (1st Cir. 1974); *United States v. Kinsey,* 505 F.2d 1354 (2nd Cir. 1974); *United States v. Moore,* 446 F.2d 448 (3rd Cir. 1971); *United States v.*

*Sifuentes,* 504 F.2d 845 (4th Cir. 1974); *United States v. Gaines,* 489 F.2d 690 (5th Cir. 1974); *United States v. Dinapoli,* 519 F.2d 104 (6th Cir. 1975); *United States v. Gavic,* 520 F.2d 1346 (8th Cir. 1975); *United States v. Ludwig,* 508 F.2d 140 (10th Cir. 1974); *United States v. Walton,* 168 U.S.App.D.C. 305, 514 F.2d 201 (1975).

sativa L.'." *United States v. Honneus,* 508 F.2d 566, 575 (1st Cir. 1975).

We decide the issue before us by a parity of reasoning. When our Legislature adopted the Uniform Controlled Substances Act in 1971, the established scientific view regarded cannabis˜ as a monotype. See, *Cassady v. Wheeler,* 224 N.W.2d 649, 654[8] (Iowa 1974). It is only reasonable to conclude that the Legislature then understood that Cannabis Sativa L. was that scientific term in general use to describe all varieties of the plant with the hallucinogenic property commonly known as marihuana. The current controversy abroad in the scientific community concerning the species of cannabis undoubtedly prompted the 1975 amendment of the Uniform Controlled Substances Act which now defines marihuana [§ 195.-010(20), RSMo Laws of 1975] to mean "all parts of the plant genus Cannabis in any species or form thereof". This legislative expression reaffirms that the lawmakers throughout the life of the Uniform Act have intended to control marihuana altogether, by whatever scientific nomination.

The judgment is affirmed.

All concur.