**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fred T. WORNOCK, Terry A. Kaye, and Robert Snow, Defendants-Appellants.**

**Nos. 78–1382, 78–1418 and 78–1433.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1978.

Decided April 4, 1979.

Rehearing and Rehearing En Banc Denied April, 30, 1979.

James M. Shellow, Milwaukee, Wis., Sam F. Adam, Julius L. Echeles, Chicago, Ill., for defendants-appellants.

Mary Stowell, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, LAY *, and PELL, Circuit Judges.

PELL, Circuit Judge.

The defendants appeal from their convictions of conspiracy to import a schedule I controlled substance, namely marihuana,[1] in violation of 21 U.S.C. §§ 963 and 952(a). In brief, the evidence showed that the defendants Wornock, Kaye, and Snow entered an agreement to smuggle a substance they referred to as "marijuana" from Colombia to the United States. An undercover DEA agent and a pilot for United Air Lines pretended to join in the scheme. An amount of $100,000 was promised to the undercover agent for each time he ferried marijuana from Colombia to the United States. An Illinois airport manager was promised $25,000 for each landing, if he could safeguard the landing from detection.

The defendants Wornock and Snow begin their argument with the candid admission that "[t]he government proved beyond a reasonable doubt that Defendants Wornock and Snow conspired to import marijuana." These defendants, however, argue that their use of the term "marijuana" does not show beyond a reasonable doubt that they conspired to smuggle the controlled sub-

---

\* Circuit Judge Donald P. Lay of the Eighth Circuit is sitting by designation.

1. Although 21 U.S.C. § 802 refers specifically to the plant *cannabis sativa L.,* the definition of the controlled substance involved here apparently comprises all species of cannabis contain-

ing tetrahydrocannabinol (THC). *E. g., United States v. Walton,* 168 U.S.App.D.C. 305, 514 F.2d 201 (1975). We also note the spelling "marihuana" in § 802. Because the parties have used the alternate spelling "marijuana," we will ordinarily use that spelling herein.

stance, "marihuana," described in 21 U.S.C. § 802.[2]

To support this theory, the defendants submitted in evidence at trial the Second and Third Editions of Webster's New International Dictionary. Each dictionary contains two definitions of the word "marijuana." The first definition in each dictionary refers to *nicotiana glauca*, a form of wild tobacco apparently unrelated to any form of cannabis. The second definition refers to the plant *Cannabis sativa*, or the plant which is the source of the drug cannabin. "Marihuana" as defined in 21 U.S.C. § 802 is a controlled substance under the statute. 21 U.S.C. § 812. According to the defendants, the Government offered no proof that the defendants meant cannabis to be the subject of their smuggling conspiracy. No cannabis was submitted in evidence because none was successfully imported. The defendants also argue that the evidence of furtive behavior does not distinguish this conspiracy from a conspiracy to smuggle wild tobacco, which may be subject to excise tax liability, a crime not charged in the indictment.

■ We agree with the Government that it need not prove that cannabis in fact was imported. *United States v. Rose*, 590 F.2d 232 (7th Cir. 1978); *United States v. Thompson*, 493 F.2d 305 (9th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 60, 45 L.Ed.2d 60 (1974). Thus, the conviction was not improper simply because no cannabis was ever smuggled as the result of the conspiracy. The Government must, however, prove an agreement to violate the law as charged. *United States v. Rose*, 590 F.2d 232 (7th Cir. 1978); *United States v. Bright*, 550 F.2d 240 (5th Cir. 1977); *United States v. Baxter*, 492 F.2d 150 (9th Cir.), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). Proof that the object of the agreement to import was cannabis, unlawful under 21 U.S.C. § 952(a),[3] was therefore necessary. *See United States v. De La Cruz*, 420 F.2d 1093 (7th Cir. 1970).

■ We hold that the Government proved an agreement to import cannabis in violation of 21 U.S.C. § 952(a). The theory of defense argued here on appeal was argued to the jury, and the court instructed the jury as follows:

> *Nicotiana glauca*, also known as wild tobacco, according to the dictionary in evidence, was not classified as a controlled substance by Congress and an agreement to import it is not a violation of the Federal Controlled Substances Act; namely, the Act that I read to you a few moments ago.
>
> According to the dictionaries in evidence, the word marijuana means either: 1) nicotiana glauca, wild tobacco, or 2) cannabis sativa L.
>
> If you have a reasonable doubt that any defendant agreed to import cannabis sativa L., then you must find that defendant not guilty.

The trial court properly let the jury determine whether the possibility that the defendants meant "wild tobacco" by using the term "marijuana" was sufficient to raise a reasonable doubt about the unlawfulness of the purpose of the agreement under 21 U.S.C. § 952(a). From the jury's verdict it is clear it found the defendants' theory incredible.

The defendants argue that their proof of the ambiguity of the term "marijuana" was unrebutted by any evidence referable only to a cannabis importation conspiracy, and that the jury's verdict was therefore without support in the evidence. The defendants' argument fails to recognize, however, that our system of evidence relies on the use of facts outside the record, that is, a general body of knowledge which both judge and jury carry into the courtroom, without which our judicial system could not operate:

> [E]very case involves the use of hundreds or thousands of non-evidence facts. When a witness in an automobile accident

---

2. The defendant Kaye also joins in this argument, but does not concede that he joined in the conspiracy. We discuss the proof of Kaye's participation in the conspiracy *infra*.

3. Importing *nicotiana glauca* is not unlawful under this statute.

case says "car," everyone, judge and jury included, furnishes, from non-evidence sources within himself that the "car" is an automobile, not a railroad car, that it is self-propelled, probably by an internal combustion engine, that it may be assumed to have four wheels with pneumatic rubber tires, and so on. The judicial process cannot construct every case from scratch, like Descartes creating a world based on the postulate Cogito, ergo sum. Advisory Committee's Note, Fed.R.Evid. 201 (quoting Davis, *A System of Judicial Notice Based on Fairness and Convenience, Perspectives of Law* 69, 73 (1964)). *United States v. Ricciardi*, 357 F.2d 91, 95–96 (2d Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 540; 385 U.S. 814, 87 S.Ct. 35, 17 L.Ed.2d 55 (1966); C. Wright & K. Graham, *Federal Practice & Procedure*, § 5103, at 471–72. *See also United States v. Griffin*, 525 F.2d 710 (1st Cir. 1975), *cert. denied*, 424 U.S. 945, 96 S.Ct. 1414, 47 L.Ed.2d 351 (1976); *United States v. Prochaska*, 222 F.2d 1 (7th Cir.), *cert. denied*, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746 (1955). The jury brought to this trial at least an ordinary measure of common sense and everyday knowledge, an example of which is that our society customarily uses the term "marijuana" to refer to cannabis, not wild tobacco. Indeed, we venture that it is safe to say that it is unlikely that the wild tobacco definition would be known to anyone who had not resorted to an unabridged dictionary. Thus Webster's New World Dictionary of the American Language, Second College Edition (1963), for example defines the word as hemp whose dried leaves are smoked, especially in the form of cigarettes for the psychological and euphoric effects. The use of this term alone is therefore substantial and sufficiently probative evidence to support the jury's finding that the object of the conspiracy was the importation of cannabis. *Glas-*

*ser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).[4]

The defendant Kaye also argues that the evidence that he agreed to commit the crime of importing cannabis is insufficient to support the jury's guilty verdict. Kaye's theory is that he agreed merely to procure a plane and pilot for the scheme, and that he did not join the main smuggling conspiracy.

This contention is without merit. The evidence was more than sufficient for the jury to find that he was a part of the overall conspiracy. He knew the purpose of the conspiracy and the identity of co-conspirators Snow and Wornock. His efforts to assist them in bringing marijuana into the United States from Colombia included approaching Perrin to find a pilot, setting up a meeting between Snow and Perrin and Snow and Justinic, negotiating with Justinic to acquire a plane and crew, offering to pay up to $30,000 per flight to the crew, introducing Justinic to Wornock, and attempting to bribe the manager of the Kankakee Airport to acquire a secured airport for landing the airplane to carry the substantial quantity of marijuana. Indeed, his own admissions demonstrate involvement. Thus, he told Justinic on one occasion that he was part of a smuggling group trying to bring 30,000 pounds of marijuana out of Colombia, and during another conversation he told Justinic that he would have to check with his associate to see if the $56,000 per trip that Justinic was asking for would be approved.

We agree with the Government that Kaye's agreement with and membership in the charged conspiracy is manifest by both his personal efforts and his concert of action with his co-conspirators to accomplish the goal of the conspiracy. His reliance on *United States v. Hysohion*, 448 F.2d 343 (2d Cir. 1971), is misplaced. Unlike Rimbaud in that case, Kaye was no "mere casual facilitator." Kaye's argument that he was igno-

**4.** Moreover, the record shows that at least one witness interpreted "marijuana" to mean cannabis, not wild tobacco. Howard Perrin testified that after the defendant Kaye told him of the plan to smuggle "marijuana," his reaction was to call the FBI to inform them of a "drug smuggling business." Although the contents of this conversation were not admitted for their truth, the fact that Perrin made this statement shows his understanding of the meaning of the term used by the defendants.

rant of the details of the scheme does not compel a different result. *United States v. Cardi*, 478 F.2d 1362 (7th Cir. 1973), *cert. denied*, 414 U.S. 852 & 1001, 94 S.Ct. 147, 355, 38 L.Ed.2d 101, 237.

Finally, we conclude that the trial court properly refused the defendant Kaye's multiple conspiracy instruction. The indictment contained one conspiracy count, and the instructions given adequately outlined for the jury the elements of the offense, including the requirement that the defendant be a willing and knowing member of the conspiracy charged. Furthermore, the court recited for the jury Kaye's theory that his participation in the plan was limited to procuring the airplane and did not extend to membership in the smuggling conspiracy. Under these circumstances, the multiple conspiracy instruction merely would have confused the jury. *United States v. Abraham*, 541 F.2d 1234 (7th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977).

For the above reasons, the judgments of the district court are affirmed.

AFFIRMED.