# In the

# United States Court of Appeals

## For the Seventh Circuit

—————

No. 03-2786

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ROGER D. SANAPAW,

*Defendant-Appellant.*

—————

**Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 CR 242—William C. Griesbach**, *Judge.*

—————

ARGUED JANUARY 21, 2004—DECIDED APRIL 27, 2004

—————

Before FLAUM, *Chief Judge*, and POSNER and RIPPLE, *Circuit Judges*.

FLAUM, *Chief Judge*. In 2003, a jury found Roger D. Sanapaw guilty of two counts of knowingly and intentionally distributing marijuana. Sanapaw now appeals and challenges the jury instruction given at his trial defining marijuana as well as the sufficiency of the evidence showing that the substance he distributed was marijuana. For the reasons stated herein, we affirm.

## I. BACKGROUND

In the summer of 2002, Jamie Matchopatow contacted the Menominee Tribal Police Department and informed police officers that Roger Sanapaw was selling marijuana on the Menominee Reservation. Matchopatow claimed that he had purchased marijuana from Sanapaw on at least one prior occasion, and agreed to take part in two more transactions with Sanapaw while police officers observed. On July 3, 2002 and July 23, 2002, officers provided Matchopatow with money and a tape-recording device and waited outside Sanapaw's house while Matchopatow went inside. When Matchopatow entered Sanapaw's house, he asked Sanapaw if he had drugs. Sanapaw replied that he had "20's", which Matchopatow explained at trial meant $20 bags of marijuana. On July 3, 2002, Matchopatow exchanged $40 for two $20 bags of marijuana from Sanapaw. On July 23, 2002, Matchopatow exchanged $40 for joints and a $20 bag of marijuana.

The police officers present on July 3, 2002 were Officer Keith Sorlie and Officer David Wynos. Officer Sorlie testified at trial that Matchopatow returned to the undercover car with "two baggies of marijuana." Officer Sorlie had seen marijuana numerous times previously and stated that the substance in Matchopatow's baggies appeared to be marijuana. Officer Sorlie then showed the baggies to Officer Wynos, who also recognized the substance purchased from Sanapaw as marijuana.

The police officers present on July 23, 2002 were Officers Sorlie and Wynos, as well as Shawano County Sheriff's Deputy Gerald Thorpe. Deputy Thorpe has extensive experience investigating drug cases, including cases involving marijuana. Based upon his prior experience, Deputy Thorpe identified the materials purchased from Sanapaw as marijuana cigarettes and a baggie of what appeared to be

marijuana. Officers Sorlie and Wynos agreed that the substance purchased from Sanapaw on July 23 was marijuana.

The baggies and joints that Sanapaw sold on July 3 and July 23 were analyzed by Michelle Zimmerman, a forensic scientist at the Wisconsin State Crime Laboratory. Zimmerman, a chemist, is trained to analyze evidence for the presence of controlled substances. Her analysis of the substances at issue in this case revealed that the greenish-brown plant material sold by Sanapaw contained both tetrahydrocannabinol ("THC") and other cannabinoids. Zimmerman explained that THC occurs naturally only in marijuana, and although it can be synthesized, the presence of other cannabinoids is not consistent with synthetic THC. Zimmerman further testified that her visual inspection of the material revealed tiny cystolith hairs that are characteristic of marijuana leaves. Based upon this, Zimmerman concluded that the substance procured from Sanapaw was marijuana.

Sanapaw was arrested by law enforcement officers on November 6, 2002. When Sanapaw was informed that he was charged with selling marijuana, he replied, "Why don't you go after the coke dealers? I just sell marijuana to make ends meet."

Sanapaw was subsequently indicted for knowingly and intentionally distributing marijuana on July 3, 2002 and July 23, 2002. His jury trial took place on February 11 and 12, 2003. The substances sold by Sanapaw were entered into evidence, and the jury was allowed to examine the plant-like material wrapped within two plastic bags and sealed with labels. Sanapaw was convicted on February 12, 2003, and now appeals.

## II. DISCUSSION

Sanapaw's first issue on appeal is whether the district court properly instructed the jury that marijuana "means all species of marijuana containing tetrahydrocannabinol . . . ." Sanapaw acknowledges that the jury instruction conforms with this Court's definition of marijuana in *United States v. Lupo*, 652 F.2d 723, 728 (7th Cir. 1981). However, Sanapaw argues that *Lupo* was wrongly decided and amounts to improper legislation by the judiciary. We disagree.

It is true that in the Controlled Substances Act of 1970 ("the Act"), Congress defined marijuana to include "all parts of the plant Cannabis sativa L.," rather than "all species of marijuana containing tetrahydrocannabinol." *See* 21 U.S.C. § 802(16). However, it is also true that when the Act was drafted, Congress believed that marijuana was monotypic—that is, Congress believed that Cannabis sativa L. was the only type of marijuana. *See United States v. Walton*, 514 F.2d 201, 203 (D.C. Cir. 1975). Assuming that Cannabis is polytypic,[1] the question thus becomes whether it would be unreasonable to apply the Act only to the species of marijuana known as Cannabis sativa L.

This Court, and every other court that has decided this issue, has concluded that it would be manifestly unreasonable to interpret the Act to apply solely to Cannabis sativa L. *See, e.g., Lupo*, 652 F.2d at 728; *Walton*, 514 F.2d at 203; *United States v. Gagnon*, 635 F.2d 766, 770 (10th Cir. 1980); *United States v. Maskeny*, 609 F.2d 183, 188 (5th Cir. 1980); *United States v. Kelly*, 527 F.2d 961, 964 (9th Cir. 1976); *United States v. Gavic*, 520 F.2d 1346, 1352 (8th

---

[1] Although Sanapaw provides no citations in his brief to establish the polytypic nature of marijuana, *United States v. Walton* indicates that "the possible polytypical status of marijuana" was discovered in the late 1960's. 514 F.2d at 203.

Cir. 1975); *United States v. Dinapoli*, 519 F.2d 104, 106 (6th Cir. 1975); *United States v. Honneus*, 508 F.2d 566, 574 (1st Cir. 1974); *United States v. Kinsey*, 505 F.2d 1354, 1354 (2d Cir. 1974). The legislative history of the Act indicates that the purpose of banning marijuana was to ban the euphoric effects produced by THC. *See Walton*, 514 F.2d at 202. However, all species of marijuana possess THC. *See id.* It is absurd to believe that Congress intended to ban the euphoric effect of one species of marijuana but not the exact same euphoric effect of other species of marijuana, and we refuse to adopt such an interpretation. As even Sanapaw admits, strict construction of statutory language "is to be avoided when the result would be senseless or clearly at odds with the evident purpose of the statute." *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir. 1996).

Congress's thirty-year acquiescence to a definition of marijuana that includes all Cannabis containing THC indicates that the courts have properly interpreted the Act. We therefore decline Sanapaw's invitation to overturn *United States v. Lupo*. We conclude that the jury instruction given by the district court, proper under *Lupo*, was not in error.

Even if the jury instruction was proper, Sanapaw argues that the government did not provide sufficient evidence to prove that he sold marijuana rather than some other vegetation containing THC. Sanapaw first insists that the government's case must fail because no witness identified the substance he sold as Cannabis. He further asserts that it is not enough that numerous officers stated that the substance appeared to be marijuana because none of the officers were qualified as an expert who could testify that it was actually marijuana. Finally, Sanapaw contends that the government failed to offer evidence that the substance was not one of the legal parts of the marijuana plant, namely, its stalks, fiber, or sterilized seeds. Sanapaw's argument is a nonstarter.

In a challenge to the sufficiency of the evidence, this Court "view[s] the evidence in the light most favorable to the prosecution and will reverse a conviction only if no rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." *United States v. Peters*, 277 F.3d 963, 967 (7th Cir. 2002). When a defendant is charged with the distribution of a controlled substance, "the government need not prove the identity of a controlled substance by direct evidence, as long as the available circumstantial evidence establishes its identity beyond a reasonable doubt." *United States v. Dominguez*, 992 F.2d 678, 681 (7th Cir. 1993). Such circumstantial evidence includes: "on-the-scene remarks by a conspirator identifying the substance as a drug; lay-experience based on familiarity through prior use, trading, or law enforcement; and behavior characteristic of drug sales." *Id.* In other words, neither expert testimony nor a chemical test of the substance sold is required to prove distribution of a controlled substance.

In this case, the government presented ample evidence from which a rational jury could conclude that Sanapaw distributed marijuana. Specifically, three law enforcement officers with prior experience in drug detection testified that the substance appeared to be marijuana. Additionally, Matchopatow, a marijuana user, testified that he asked Sanapaw to sell him marijuana and that Sanapaw did sell him marijuana. Zimmerman, a chemist who analyzes controlled substances, testified that the substance sold by Sanapaw contained THC as well as other cannabinoids found in marijuana but not in synthetic THC. Finally, when Sanapaw was arrested he admitted to selling marijuana "to make ends meet."

The government also presented sufficient evidence to prove that the marijuana Sanapaw sold was not one of the legalized parts of the plant. 21 U.S.C. § 802(16) excludes from the definition of marijuana "the mature stalks of such

plant, fiber produced from such stalks, oil or cake made from the seeds of such plant . . . or the sterilized seed of such plant." Zimmerman, a forensic scientist, testified that the substance Sanapaw sold was a greenish-brown plant material with cystolith hairs characteristic of marijuana leaves. Marijuana leaves are indisputably not a legal form of the marijuana plant. Moreover, if the jury had any doubt about Zimmerman's testimony, they had the opportunity to examine the marijuana themselves.

When every reasonable inference is drawn in favor of the government, as it must be at this stage, it is clear that a rational jury could have found that Sanapaw distributed marijuana containing THC. As we earlier held, the Controlled Substances Act of 1970 banned all forms of marijuana containing THC. The government need not present expert botanical testimony regarding the genus and species of a controlled substance to prove its case.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—4-27-04